KATHARINE C. HILTON, Plaintiff, *v.* NEW YORK LIFE INSURANCE COMPANY et al., Defendants.

(Supreme Court, Erie Special Term, September, 1920.)

Insurance (life) — terms of policy of — husband and wife — contracts — injunctions — assignments — Domestic Relations Law, § 52.

The provisions of section 52 of the Domestic Relations Law relating to the rights of wives in policies written upon the lives

of their husbands relate to policies in which the contract of the insurance company is with the wife.   (P. 81.)

A policy of insurance issued by defendant in 1908 upon the life of plaintiff's husband, payable to her and in the event of her prior death to her children or to the survivors or survivor, etc., designated the husband as "owner or holder" but it did not state upon whose application it was issued.  The husband paid the premiums until 1917, during which year there were some domestic difficulties between him and his wife, and subsequent to that time she paid the premiums directly to the insurance company which against her protest has applied all dividends since that time to the reduction of a loan made to her husband in April, 1916, without her knowledge or consent. The insurance company demanded that she pay the premiums in full, together with interest on the loan and threatens that unless such payments are made to date the policy will lapse for non-payment.  *Held,* that the circumstances clearly showed that the contract of insurance was with the husband who by the terms of the policy had the right to determine what application should be made of dividends, could surrender the policy and determine upon the mode of settlement after his death.

In an action by the wife to enjoin the insurance company from applying dividends in reduction of the loan, to obtain an accounting of past dividends, interest, etc., and to have the rights of all parties in interest determined, she is only entitled to judgment that the insurance company be required to comply with the terms of the policy as to all dividends declared since January, 1916, and in all other respects the relief asked for must be denied.

It being conceded that the husband since 1916 had made no election under the dividend clause of the policy, the dividends since January, 1916, must be deemed to have been applied to the purchase of paid-up additions to the policy under its terms.  (P. 83.)

The fact that the insured made a gift of the policy to plaintiff by delivery, could not affect the rights of the insurance company under a clause in the policy that no assignment thereof should bind the company unless filed with it at its home office, and the company having had no notice of the transfer of the policy to plaintiff was fully protected by said clause.

ACTION to enjoin cancellation of policy and determine the rights of the parties thereto,

Supreme Court, September, 1920.    [Vol. 113.

Clinton T. Hortin, for plaintiff.

Lyman M. Bass, for defendant insurance company.

SEARS, J.   On January 14, 1908, the defendant company issued a policy of insurance on the life of Albert B. Hilton who is the husband of the plaintiff, which read as follows:

"NEW YORK LIFE INSURANCE COMPANY, in consideration of the annual premium of twelve hundred sixty-five dollars and fifty cents, and of the payment of a like amount upon each fourteenth day of January, until the death of the insured, promises to pay at the Home Office of the Company in the City of New York, upon receipt at said Home Office of due proof of the death of Albert B. Hilton of New York, County of New York, State of New York, herein called the Insured, twenty-five thousand dollars, less any indebtedness hereon to the Company and any unpaid portion of the premium for the then current policy year upon surrender of this policy, properly receipted, to Katharine C., wife of the insured; or, in the event of her prior death, to Dorothy C., Albert C. and Barbara I. Trego, her children, share alike, or to the survivors or survivor; or, if there be no such survivor, to the insured's Executors, Administrators or Assigns, beneficiaries, without right of revocation."

The policy also contained, among others, the following provisions:

"*Dividends.*— Dividends at the option of the owner of this policy shall on the thirty-first day of March of each year be either:

" (1) Paid in cash, or

" (2) Applied toward the payment of any premium or premiums, or

" (3) Applied to the purchase of paid-up additions to the policy, or

" (4) Left to accumulate to the credit of the policy with interest at three per centum per annum and payable at the maturity of the policy, but withdrawable on any anniversary of the policy.

" Unless the owner of this policy shall elect otherwise within three months after the mailing by the Company of a written notice requiring such election, the dividends shall be applied to purchase paid-up additions to the policy."

" *Loans.*— The Company at any time will advance upon the sole security of this policy, at a rate of interest not greater than five per centum per annum, a sum not exceeding the amount specified in the table of loan values herein set forth, deducting therefrom all other indebtedness hereon to the Company. Failure to repay any such advance or interest shall not avoid this policy unless the total indebtedness hereon to the Company shall equal or exceed the aggregate of all unpaid dividends and accumulations and of eighty per centum of the net value of the policy and all additions thereto, and thirty days' notice shall have been given by the Company."

" *Cash surrender value.*— After premiums have been paid in cash for three full years, the insured may surrender this policy to the Company, together with any dividend additions then outstanding, for a cash surrender value, provided that at the time when such cash surrender value is applied for the premium has not been unpaid more than three months; the amount of such cash surrender value shall be equal to the loan value then available plus five per cent of said loan value, to which shall be added the cash surrender value of any dividend additions then outstanding; if, however, there is an indebtedness to the

Company, the amount of such indebtedness will be deducted from the above cash surrender value and the excess will be paid in cash.''

''*Assignment.*— No assignment of this policy shall be binding upon the Company unless it be filed with the Company at its said Home Office. The Company assumes no responsibility as to the validity of any assignment.''

'' *Options on surrender or lapse.*—After this policy shall have been in force three full years, it may be surrendered by the owner at any time prior to any default or within three months after any default. Thereupon, * * *'' (Here follow several options.)

'' *Modes of settlement.*— The Insured or the owner or the beneficiary after the Insured's death, in case the Insured shall have made no election, may by written notice to the Company at its Home Office, elect to have the net sum payable under this policy upon the death of the Insured paid either in cash or as follows: * * *'' (Here follow three options.)

On the 20th of April, 1916, the insured, Albert B. Hilton, applied for, and obtained, a loan upon the security of this policy for $4,500. Previously, without the consent of the plaintiff or her children, he had had the company note upon the policy a change of beneficiary to his own executors, administrators or assigns, but as the original designation of beneficiaries in the policy was irrevocable, this deviation was entirely without legal effect, and must be disregarded. The loan from the company to Albert B. Hilton was obtained without the knowledge or consent of the plaintiff. In the spring or summer of 1917, there was some domestic difficulty between plaintiff and her husband, and subsequent to that time the plaintiff, herself, has paid the premiums directly to the defendant company. The company has, against the protest of

the plaintiff, applied all dividends since that time to the reduction of the loan to the plaintiff's husband, which the company made in 1916, and has demanded that the plaintiff pay the premiums in full, together with the accruing interest upon the loan, and has threatened that, unless such payments were made to date, the policy would lapse for nonpayment.

Albert B. Hilton is a party to this action, and was served by publication, but has not appeared. The plaintiff's children named as contingent beneficiaries in the policy are parties to this action and have appeared, but have not answered.

The plaintiff in this action seeks, among other things, to enjoin the defendant company from applying dividends upon the policy to reduce its loan to Albert B. Hilton, to obtain an accounting for past dividends, interest, etc., and to have the rights of the parties to the policy determined.

The only issues before the court at this time are those raised by the answer of the defendant insurance company, and, as between the plaintiff and the insurance company, the litigation relates primarily to the question as to whether the plaintiff was not only the beneficiary, but, as such, the owner of a vested interest in the policy, indefeasible during her lifetime by any act of the insured. The policy does not state upon its face on whose application the policy was issued, or by whom the premiums were to be paid. It is singularly silent in these respects. The plaintiff's testimony, however, discloses that the policy was issued as the result of negotiations with Mr. Hilton, and was delivered by the agents of the company to him, the plaintiff having testified thus: " Then Mr. Brinkerhoff, who was the manager of the Metropolitan, suggested that he might get into the New York Life, so that Mr. Brinkerhoff took us there personally, and they told

Mr. Hilton if he could reduce 30 pounds, they would accept him. Q. That resulted in this policy being written? A. In this policy being written. Q. After the policy was issued by the New York Life, what happened to it? A. Mr. Hilton gave it to me, and told me that was a gift to me to protect me in case of his death, and it was for me and my children and their survivors absolutely. Q. Did he have the policy in his possession at the time? A. He did. Q. What did he do with the policy itself? A. He gave it to me."

Premiums from that time to 1917 were paid in this manner: Mr. Hilton made his wife an allowance of $1,000 a month for her personal expenses, and when each premium fell due, she gave to her husband a check for the amount of the premium, payable to his order upon an account which was made up entirely from her allowance from her husband. Mr. Hilton then personally paid the premium. In some later instances, Mr. Hilton paid the premiums, and then, upon giving the plaintiff her personal allowance, reduced it by the amount of premiums so paid. The insurance company had no notice, until after the loan was made, of any claimed interest of Mrs. Hilton in the policy, except what appeared upon the face of the policy itself.

Under these circumstances, the contract was clearly between the company and Mr. Hilton. He is the person designated as " owner or holder " in the policy. *Travelers Ins. Co.* v. *Healey,* 164 N. Y. 607, affg. 25 App. Div. 53, on the opinion below. In the course of the opinion in that case, the following occurs: "Alonzo H. Doty in May, 1874, took out the policy and paid the premiums for the ten years thereafter as required by its terms. He thus became the holder and owner of the policy. (*Garner* v. *Germania Life Ins. Co.,* 17 Abb. 7.) In common phrase, he who takes out the

policy and pays the premiums is the policyholder. (*People* v. *Security Life Ins. Co.*, 78 N. Y. 114; *People* v. *Empire Mutual Life,* 92 N. Y. 105).''

The provisions of section 52 of the Domestic Relations Law relating to the rights of wives in policies written upon the lives of their husbands relate to policies in which the contract of the insurance company is with the wife. *Bradshaw* v. *Mutual Life Ins. Co.,* 187 N. Y. 347. The distinction is clearly marked by comparing the opinion in the *Bradshaw* case upon the first appeal (187 N. Y. 347), with the opinion in the same case upon the second appeal (205 id. 467). The difference between the result upon the two appeals is due to the additional evidence which was before the court on the second appeal, that the written application for the policy was signed by the husband in the wife's name, to wit: '' Cora J. Bradshaw, by Robert C. Bradshaw,'' as a result of which evidence the court held that the contract of the insurance company was with the wife, and that the statute now included in section 52 of the Domestic Relations Law was, therefore, applicable. *Bradshaw* v. *Mutual Life Ins. Co.,* 205 N. Y. 467. The dicta in *Holmes* v. *Gilman,* 138 N. Y. 382, and in *Shipman* v. *Protected Home Circle,* 174 id. 398, stating that where insurance is effected by the husband for the benefit of the wife, he is held to be the agent of the wife, cannot be followed in view of the decision in the *Bradshaw* case on the first appeal.

The policy in the instant case is similar to the one before the court in *Travelers Ins. Co.* v. *Healey, supra,* and in the *Bradshaw* case as it appeared to the court upon the first appeal. The language from the opinion in *Travelers Ins. Co.* v. *Healey,* is pertinent: '' By its terms Alonzo H. Doty's life was insured for $2,000, payable upon his death to his wife Josephine if she should survive him; if she should not survive

him, then to their children surviving him; and, if neither wife nor child should survive him, then to his executors, administrators or assigns, subject, however, to the 8th clause of the policy, which provided, ' That this policy may be converted into cash at the option of the holder at any time after the expiration of fifteen years from the date hereof for the amount indorsed upon the back of this policy.' Thus, if the holder should exercise the option he would become the beneficiary in the lifetime of Alonzo H. Doty, and the wife and the Doty children would cease to be beneficiaries, or, rather, never would become beneficiaries at all. The plaintiff by the terms of the policy held out to Alonzo H. Doty two inducements, one, the provision for his wife or children, if he could get along without himself resorting to the policy in his lifetime; the other, that if he could not get along, if poverty or misfortune constrained him, he could himself, after fifteen years pass, realize its cash value. Alonzo H. Doty thus had the right to become sole beneficiary of the policy; it was a property right and he could dispose of it without consulting either his wife or his children, since whatever interests they had were subject to the contingency that he by exercising the option could make his own right superior and absolute, and thereby cut off their contingent interests.''

Thus here Albert B. Hilton being the owner and holder of this policy could determine what application should be made of the dividends, could surrender the policy and could determine upon the mode of settlement after his death.

Although the provision of the policy in respect to loans does not state who had the right to use the policy as security for such a loan, or in other words to whom such loan was to be made, nevertheless it is clear that

the loan was to be made to the owner or holder of the policy, that is, to the one to whom the policy was issued, or his assigns, and this view is strengthened by the position of the clause in relation to the provisions in respect to dividends and surrender. The fact that Mr. Hilton handed the policy over to Mrs. Hilton, saying it was a gift, cannot affect the rights of the insurance company, for the policy provides: " No assignment of this policy shall be binding upon the company unless it be filed with the company at its said home office."

In view of the fact that the company had no notice of any assignment or transfer to the plaintiff, this clause affords the company ample protection.

As to the dividends, however, it is conceded by the company that the insured since 1916 has made no election under the clause quoted above, and the dividends must be deemed to have been applied to the purchase of paid-up additions to the policy under the terms of the policy itself.

This view of the merits of the controversy renders it unnecessary to consider in detail the question as to the jurisdiction of the court, and this decision is made upon the assumption that the service by publication on the defendant Albert B. Hilton justifies the court in passing upon the merits of the issue raised by the defendant company's answer. The question reserved relating to the evidence is immaterial, in view of this decision upon the merits.

The plaintiff, therefore, is entitled to a judgment in so far as the insurance company is concerned, that the company be required to comply with the terms of the policy in respect to dividends, as to all dividends since the dividend declared January, 1916. In all other respects the relief demanded must be denied the plaintiff.

Ordered accordingly.