## Fisher, Exrx., *v.* Fidelity and Casualty Company of New York, Appellant.

Argued April 16, 1934. Before FRAZER, C. J., SIMPSON, SCHAFFER, MAXEY, DREW and LINN, JJ.

184

*George F. Blewett,* with him *Robert P. F. Maxwell,* for appellant.

*Samuel J. Gottesfeld,* for appellee.

OPINION BY MR. JUSTICE LINN, June 30, 1934:

This suit on an accident insurance policy to recover specific injury indemnity is brought on the theory that the insured's personal representative may exercise an option that the insured, if he had lived, might have exercised to recover for specific injury instead of under a total disability provision. The appeal is from the judgment for want of a sufficient affidavit of defense.

The statement of claim sets forth the circumstances in which the policy was issued, "in order that the terms and provisions of said policy may be properly understood and interpreted for the purpose of ascertaining such intention......" Among these circumstances were that, from November, 1911, until November, 1929, plaintiff held defendant's policy "providing for full life-indemnity and disability" insurance. At that time he made a radical change in the form and scope of insurance taken out with defendant; he no longer took its policy providing for the payment of principal sum in the event of death by accident. The coverage formerly taken "was replaced" (the statement avers) by two policies; one, that in suit, providing insurance against accident, but not against death, and the other, a health policy. This insurance was kept alive thereafter by annual renewals. The assured also had a number of

policies issued by other insurers against death. He was seriously injured* in an automobile accident October 5, 1932, and, as a result, as we understand it, died nine days later. Among his injuries, classified in the schedule of injuries in the policy as a specific injury, was the loss of an eye which was removed October 7th.

The policy-form on which the policy was written was prepared to permit insurance in a principal sum on death by accident, and indemnity for disability, total and partial, and, in certain circumstances, for specific injuries according to a schedule. While providing for the payment of indemnity for disability, the policy distinctly stated that no principal sum should be paid at death. (Special Provisions, No. 11.) "The Insuring Clause," at the beginning of the policy, was drawn to provide insurance "in the principal sum and weekly indemnity......AGAINST—Bodily injury sustained ......through accidental means......and resulting directly, independently and exclusively of all other causes, in—(a) Total disability [defined]......, (b) Partial disability [defined]......, (c) Specific injury [specified in the Schedule of Injuries set forth hereon] sustained within ninety days from the date of the accident, or at any time while the Assured suffers total disability as the direct result of the bodily injury causing the specific injury, (d) Death"; but this "insuring clause" was expressly agreed to be "subject to all the provisions and limitations hereinafter contained." These "provisions and limitations" then follow in a number of articles. The first provides that total disability shall be paid as long as the insured "lives and suffers said disability." The second provides for partial disability of various degrees. The third, which determines this suit, is as follows:

---

* In the proof of claim filed the injuries were stated to be: "Eye gouged out, skull and other bones fractured, bruises, internal injuries."

"DEATH

"Article 3. If the Assured suffers total disability, and if, during the period of said disability, the Assured suffers death as the direct result of the bodily injury causing the said disability; or, if within ninety days from the date of the accident, irrespective of disability, the Assured suffers death as the direct result of a bodily injury: the Company will pay the Beneficiary

THE PRINCIPAL SUM

and in addition

The Weekly Indemnity

for that part of the period between the date of the accident and the date of death for which no weekly indemnity has been paid."

The beneficiary named in the policy was the wife of the assured. As his death resulted from the accident, a direct obligation to her as beneficiary arose under article 3. The policy also provided under "SPECIAL PROVISIONS," as follows: "11. The principal sum of this policy is NONE dollars ($****)...... 12. The weekly indemnity of this policy is ONE HUNDRED AND 00/100 Dollars ($100.00) a week." The amount therefore payable under article 3 was at the rate of $100 a week for the period prior to the assured's death. This policy differed from the one in effect before 1929 in that the prior policy provided for the payment of $5,000 on death by accident.

When the scope of the insurance carried by the assured prior to 1929 was changed from provision for both life and accident insurance, to accident insurance alone, the intention of both assured and insurer was, in that respect, clearly embodied in the provision declaring that no principal sum should be payable at death, and retaining a primary liability to pay the weekly indemnity "for that part of the period between the date of the accident and the date of the death for which no weekly indemnity has been paid." The insured's death

as a result of the accident, matured the insurer's obligation to pay the weekly indemnity to the beneficiary.

This suit was not brought by the beneficiary, but is brought by the insured's executrix. The mere accident that the person named as beneficiary is also executrix can give no greater right to either than arises out of the contract. The beneficiary takes insurance clear of creditors, while, if the executrix recovers, distribution passes under the assured's will and, if necessary, to creditors.

The executrix was allowed to recover in the court below by a misunderstanding of the provisions of article 4. It is entitled "OPTIONAL INDEMNITY FOR INJURIES," and provides "If the Assured sustains a specific injury he may elect to receive either any indemnity to which he may be entitled under Articles 1 and 2 [referred to above] or such......[sum as is specified for specific injury in the schedule of injuries] ...... In addition to the payment of any indemnity that the Assured may be entitled to and may elect to receive hereunder, the Company will pay the Assured

The Weekly Indemnity

for the period between the date of the accident and the date that the Assured sustains the specific injury. If a claim is made for an injury defined in section 2 of the schedule, written notice of the Assured's election must be given to the Company at its home office in New York City within twenty days from the date that the Assured suffers the said injury."

If the assured had lived, he might or might not have elected, under article 4, to receive payment for specific injury, instead of taking the weekly indemnity. Until he died, article 1 was operative; his death thereafter, before any election was made, brought into immediate operation article 3, which fixed the insurer's obligation to discharge the contract. Instead of giving effect to article 3, the learned court below was of opinion that, because, in his lifetime, the assured might have exercised

an option to substitute one form or measure of indemnity for another, the right to exercise the election passed to the assured's personal representative. Such construction cannot be accepted, because it is obviously contrary to what the parties intended. If an assured became totally disabled and also sustained some specific injury, it might be a nice question for him to determine whether, considering all the circumstances, he would be more benefited by the lump sum provided for specific injury than by receiving the weekly indemnity as long as he was disabled. But if he died, within the time for election, the unpaid amount at the total disability rate, would, in the nature of things, necessarily be so small as compared with the amount payable for specific injury, that there would, in fact, be no choice at all because of the disproportion in the amounts; it would be so one-sided that it is impossible to believe the parties intended that the right to choose after death should exist and be exercised by the personal representative. To hold that the option survived death, would make article 4 in effect a promise to pay the estate of the insured the specific indemnity whenever insured died within the time for election—a result inconsistent with the provisions of article 3. As the policy specifically provided, and as both parties intended it should provide, that at death by accident the amount of unpaid weekly indemnity should be paid to the beneficiary, there is no room for the construction that the right vested in the beneficiary under article 3 was set aside by the optional provision and that the right to elect passed to the personal representative.

The learned court below apparently relied on two cases, neither of which is in point. In the first, Miner v. New Amsterdam Cas. Co., 220 Ill. App. 74, the policy provided—so far as is now material—that, in the event of the loss of both feet, both hands, or a hand and foot, or both eyes, the principal sum should become due. It also provided that, in case of total or partial disability,

weekly indemnities should be due, but that the insured might, nevertheless, elect specific indemnity for certain injuries less serious than those enumerated above. The insured had both legs cut off in a railroad accident, and died four days later. His administratrix was allowed to recover the principal sum. But this was the only indemnity to which insured was entitled for this particular injury by the terms of the policy; there was no question of election. The question was whether it made any difference that he died within four days of the accident, and, the promise to pay this indemnity being unconditional, it was held that it did not.

The second case is North American Accident Insurance Co. v. Cochran, 74 Colo. 515, 223 Pac. 28. It appears that the insured was entitled either to weekly or specific indemnity, or an optional combination of weekly and specific indemnity. Without electing, but while still alive, insured sued for the specific indemnity, expressly waiving all right to weekly indemnity. It was held he could recover, the court emphasizing the fact that the provision as to election did not apply to the indemnity which plaintiff was seeking.

The authorities cited by the appellee to the effect that an option in an insurance contract survives death relate to the options existing on forfeiture of a portion for default in paying the premiums. As provision is made by statutes in most states for such contingencies, different considerations control, and the cases are not important here, where it clearly appears that the option was intended to be personal to the insured. The present case is more like McDonald v. Columbian National Life Insurance Co., 253 Pa. 239, 97 A. 1086 (holding that the right to elect extended insurance did not survive death), in that the provision for weekly indemnities is automatic, unless specific indemnity is elected, just as in that case a paid-up policy was automatic, unless extended insurance was elected.

Judgment reversed with a procedendo.

CONCURRING OPINION BY MR. JUSTICE MAXEY:

I would base the reversal of judgment in this case flatly on the ground that the policy sued upon is a *non-fatal* accident policy, and that since the assured met with a *fatal* accident there is no question of the right of any election by the assured, or the passing of such right after his death to his beneficiary or legal representatives. The policy would have conferred substantial benefits upon the assured had he met with a nonfatal disabling accident; it would have conferred no benefits on anybody had the assured been instantly killed; and it conferred only the right of weekly indemnity upon the assured or the beneficiary in the event that the assured met with an accident that resulted in his death within ninety days or within a period of total disability even though it was longer than ninety days. If the assured had lived more than ninety days in a condition of partial disability, he would have been entitled to special benefits, for example, for the loss of an eye or a leg or an arm. Article 3 of the insurance policy provides: "If the Assured suffers total disability, and if, during the period of said disability, the Assured suffers death as the direct result of the bodily injury causing the said disability, or, if within ninety days from the date of the accident, irrespective of disability, the Assured suffers death as the direct result of a bodily injury, the company will pay the Beneficiary

THE PRINCIPAL SUM,
and in addition
THE WEEKLY INDEMNITY

for that part of the period between the date of the accident and the date of death for which no weekly indemnity has been paid."

Paragraph "11," under the heading "Special Provisions" of the insurance policy, defines "principal sum" as "NONE dollars ($****)." The assured having died nine days after receiving his fatal injuries, all that his

legal representative is entitled to is the weekly indemnity for nine days. The court below decided that since the fatal accident resulted in the loss of assured's eye a short time before his death, he would have been entitled to $15,000 under the terms of the policy if he had made a certain election of benefits provided for in the policy, but that since he did not do so, the right of election passed to his legal representative. Under this construction of the policy, if, for example, in the fatal accident the assured had suffered the loss of both legs and had died (say) nine days, or nine hours, or nine minutes later, he would have been entitled to $20,000, provided he had made the appropriate election during the short interval of survival, but that, having made no election, this right passed to his legal representative. Nothing of this kind was contemplated by this policy or is promised by it. Inasmuch as he died as a result of this accident, nothing except the weekly indemnity for the period between the date of the accident and the date of the death was payable under this policy.

The assured previously had a policy in the same company, which is set forth in the pleadings "for the better understanding" of the policy sued upon. This earlier policy was superseded on November 14, 1929, by the policy now sued on. It provided that in the event of the death of the assured, as a direct result of bodily injuries, the company would pay the beneficiary $5,000, (but in such an accident as the one which resulted in assured's death the sum paid would have been $10,000), and for such period between the date of the accident and the date of death for which no weekly indemnity has been paid, an additional sum of $25 a week. That policy also contained a provision that in the event the assured lost one eye he would receive $2,500, and if he lost both hands or both feet, $5,000. The policy sued upon provides that for the loss of one eye the assured would receive $15,000, and for the loss of both eyes or both hands or both feet, $30,000. It is also clearly pro-

vided in the policy sued upon that in the event of death resulting from bodily injuries, with or without total disability, the beneficiary would be paid nothing. The annual premium on the old policy was $75 and on the new policy was $78. For practically the very same annual premium, therefore, the assured received in his new policy *a much better accident* policy, but *no insurance against death,* whereas, the *old* policy provided for less substantial payments in the event of injuries, but a very substantial payment in the event of death.

*Under the construction given the new policy by the court below* the assured would receive for practically the same annual premium as he had previously paid, a policy not only guaranteeing him much larger benefits for disabling injuries but also providing for the payment of benefits in the event the accident resulted in his death, *if in such fatal accident any one of the many specific injuries enumerated in the policy was inflicted,* such as the loss of a leg, or an arm, or an eye, or the loss of a thumb and forefinger of either hand. For example, in the event of the loss of the assured's thumb and forefinger of either hand, the policy provides that $10,000 would be payable. It certainly was not contemplated that if, as an *incident* to the fatal accident, the victim's thumb and forefinger were dismembered, that the beneficiary would receive $10,000. The purport of the contract was that if the victim *survived* such an accident more than ninety days and as a result of the accident lost the thumb and forefinger of either hand, he would be paid $10,000 for such disability. Having died nine days after the accident and as a result of it, the assured's incidental loss of an eye in the same accident, is merged in his loss of life. To award $15,000 for this incidental loss of an eye in a fatal accident is to make this policy, in beneficial effect a fatal accident policy, and this is something which it clearly is *not.*