## Browne *v.* John Hancock Mutual Life Insurance Company, Appellant.

Argued May 6, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

224

*Charles M. Willits,* with him *Brown & Williams,* for appellant.

*Louis A. J. Robbins,* for appellee.

OPINION BY PARKER, J., October 2, 1935:

Plaintiff, the beneficiary in an insurance policy on the life of her husband, James F. Browne, brought this action to recover a balance claimed to be due thereon. The cause was submitted to the court upon an agreed statement of facts and judgment was entered for the amount claimed by the plaintiff. Two questions of law

are raised on the agreed facts, to wit: (1) Was the policy in default by reason of a failure to pay the premium within the time fixed by the contract, and (2) was the beneficiary, after the death of the assured, entitled to elect to take the benefit of that one of three options which was then the most favorable to the beneficiary, and did she so elect?

1. On July 10, 1923, the defendant company issued and delivered to James F. Browne an endowment policy of insurance on his life. The contract of insurance provided as follows: "In consideration of the representations in the application herefor, a copy of which is attached hereto and made a part hereof, and of the premium of Thirty-three and 56/100 Dollars to be paid on delivery of this policy and of the payment of a like premium on or before the tenth day of July in each succeeding year," etc. The application, however, which was attached to and made part of the policy was as follows: "Premium to be paid quarterly, amount $8.64." It is conceded that by the terms of the contract the premium was to be paid in quarterly installments, but appellee insists that it was not payable in advance. Under the heading of "Payment of Premiums" it was provided by the policy that all premiums were "payable in advance annually or in regular equivalent semi-annual or quarterly installments." The policy also provided for a grace of thirty-one days without interest during which the policy should remain in force. All premiums due on the policy up to and including the payment for the quarter beginning July 10, 1932, were paid to the defendant. Payment was never made for the quarter beginning October 10, 1932, and on December 16, 1932, James F. Browne died.

We find no merit in the contention of the appellee that under this state of facts the assured was entitled to pay the premium at any time during the quarterly period. The first premium was certainly due in ad-

vance and quarterly thereafter would therefore mean at quarterly intervals. In other words, if the first payment was due on July 10, 1923, the second payment would be due on October 10, 1923. We are impelled to this conclusion, in any event, by the terms of the insurance law in force at the time in this state, for it is provided by the Act of May 17, 1921, P. L. 682, Article IV, §410 (40 PS 510), that no policy of life or endowment insurance, except policies of industrial insurance where the premiums are payable monthly or oftener, shall be issued or delivered unless it contains, in substance, the following provisions: "(a) A provision that all premiums shall be payable in advance, either at the home office of the company or to an agent of the company, upon delivery of a receipt signed by one or more of the officers of the company, who shall be named in the policy." Taking into account the law and the facts referred to, particularly the special provision for the payment of premiums, we can come to no other conclusion than that by the terms of the policy the quarterly installments were payable in advance.

Except as otherwise provided, whether by statute or contract, the nonpayment when due of the premium on a life insurance policy causes a forfeiture thereof: Lantz v. Vermont Life Ins. Co., 139 Pa. 546, 21 A. 80; Rhodes v. Royal Union Mut. Life Ins. Co., 56 Pa. Superior Ct. 233.

2. The insured having been in default for more than thirty-one days in the payment of the premium due on October 10, 1932, the rights of the beneficiary necessarily depend upon the construction of certain options granted by the contract. (See reporter's statement). An examination of the policy shows that the holder of the policy, in case of default in payment of premium, was entitled to elect one of three options based on the surrender value of the policy after taking into account any indebtedness to the company, to wit: A. Paid-up

endowment insurance; B. Surrender value in cash; or, C. Extended term insurance. No election was made by Browne prior to his death. Immediately after his death, the defendant company tendered to the beneficiary the sum of five dollars, the amount which would be due under the first option, claiming that by the death of the insured without an election by him the first option was automatically in force. Thereupon, the beneficiary wrote the defendant on December 24, 1932, as follows: "I am making application for claim on Policy No. 987599, on the life of James F. Browne, who died on December 16, 1932. Your representative was at my home to return some money on policy, which I do not understand. Clause in policy as far as I can figure places same in benefits. Please send forms for claim or have your representative stop at once." She then brought this suit claiming that the third option could be accepted by the holder of the policy at any time within ninety days after October 10, 1932, that the beneficiary was such a holder, and that the letter quoted above was an election to take advantage of the third option. Under these options, by the agreed statement of facts, if the first option was in force automatically and became fixed by the death of the insured, the beneficiary was entitled to a judgment for five dollars, while if the third option could be exercised by the beneficiary after the death of Browne and was so exercised, then the plaintiff was entitled to a judgment for $775.72 with interest from December 16, 1932, which represented the amount of insurance which would have been in force for the term of 231 days from October 10, 1932, a period expiring after the death of the insured, and after taking into account the difference between the cash surrender value of the policy and any indebtedness due by the insured to the company.

It will be observed that it is provided by option A that "without action on the part of the holder" the

policy will be "continued for its value in participating paid-up endowment insurance." We believe that the phrase "without action" as here used is the equivalent of "in case of no action," and that the death of the insured without an election by him left option A automatically in effect. To hold otherwise would permit the beneficiary after death to choose the option most advantageous to her and correspondingly unfavorable to the insurer.

The contention of the beneficiary that she was privileged, after the death of the insured, to make an election is directly contrary to the principles announced in the case of McDonald v. Columbian Nat. Life Ins. Co., 253 Pa. 239, 97 A. 1086. There, as here, there was involved a question as to the construction of options available to an insured after a default in the payment of premium and insured had died before the exercise of an option. There was likewise there involved the right of choice between options providing for paid-up insurance and term insurance, but in the McDonald case the policy itself did not have the automatic feature that is contained in the policy we are considering. However, in that case by the Massachusetts laws, which there controlled, "in the absence of any further stipulation or act" the right to have paid-up insurance was automatic. In other words, the facts in the two cases are parallel except that in the McDonald case the automatic provision was by virtue of a statute and here by the terms of the contract, and here the option is given to the holder and there to the insured. Mr. Justice WALLING, in the McDonald case, said (p. 244): "By the policy such options are given to the insured, and in our opinion must be exercised by him; especially that with reference to the purchase of extended insurance on his life. It is no more possible to procure valid life insurance on a dead man than valid fire insurance on a burned building. And, as in this

case such extended insurance was neither sought for nor obtained during the life of the insured, it cannot be secured later. The option was personal to him and cannot be exercised after the rights and liabilities of the parties have been fixed by his death. Unless the insured elects to take extended insurance the right thereto is lost."

In the recent case of Fisher, Exec., v. Fid. & Cas. Co., 316 Pa. 183, 173 A. 320, the claim was made that the insured's personal representative might exercise an option that the insured, if he had lived, could have exercised. The claim was rejected as being obviously contrary to what the parties intended. It was pointed out that if the insured had lived he might or might not have elected the option which appeared after his death to be most advantageous to him; that until death a different article was operative.

Looking at the contract in the case we are considering, the insured was in a position where he might elect to take either approximately five dollars in cash or extended insurance for a term of 231 days for approximately eight hundred dollars. If the beneficiary should be permitted to make an election after the death of the insured, she would then choose between eight hundred dollars and five dollars which, because of lack of proportion, would not be a choice. "It would be so one-sided that it is impossible to believe the parties intended that the right to choose after death should exist and be exercised by the [beneficiary] personal representative": Fisher v. Fid. & Cas. Co., supra, p. 188.

The option clause also provides that the paid-up and extended insurance under options A and C are computed upon the basis of the surrender value applied as a net single premium at the attained age of the insured upon the mortality and interest basis adopted for reserve computation. In other words, the options were, taking into account expectancy and class of in-

surance, the mathematical equivalents of each other. This was fair to the insured and insurer while if we adopt the contention of the beneficiary, plaintiff in this action, she might have elected to take eight hundred dollars in place of five dollars. We cannot believe that the parties intended by their contract any such disparity.

The appellee stresses the fact that in all three options the person authorized to make an election is the "holder" and, relying on Entwistle v. Ins. Co., 202 Pa. 141, 51 A. 759, argues that the beneficiary is a holder and consequently has a right of election. For the reasons heretofore given, it does not follow that, even though the beneficiary might here be said to be a holder, she had a right of election after the death of the insured. In any event, we think the Entwistle case is clearly distinguishable from the present case. As is pointed out by Judge KIRKPATRICK in the case of Kelly v. New England Mut. Life Ins. Co., 32 Fed. (2d) 611, 612 (affirmed by the Circuit Court of Appeals at 52 Fed. (2d) 9), the Supreme Court "was therefore faced with the alternative of either construing the word 'holder' to mean the beneficiary, or, if it construed it to mean the insured, adopting a construction which would result in wiping out the interest of the beneficiary." To this comment may be added the observation that the policy in the Entwistle case at the time was fully paid and we assume the policy did not provide for a change of beneficiary. Where the meaning of a word is ambiguous or capable of more than one meaning, we may refer to the context for the purpose of determining the meaning. We are of the opinion that the word "holder" here connotes insured or his assignee and that under the options the election was required to be made during the life of the insured. Our conclusion is supported by a number of decisions in other jurisdictions: Kelly v. New England Mut.

Life Ins. Co., supra; Zeigler v. Kansas Life Ins. Co., 120 Kan. 252, 243 P. 272, 44 A. L. R. 1367; Osborne v. Home Life Ins. Co., 123 Cal. 610, 56 P. 616; Denver Life Ins. Co. v. Crane, 19 Colo. 191, 73 P. 875; Travelers Ins. Co. v. Heasley, 49 N. Y. S. 30; Hilton v. New York Life Ins. Co., 184 N. Y. S. 2. The case of Jeske v. Metro. Life Ins. Co., 113 Pa. Superior Ct. 118, 172 A. 172, also relied on by the appellee, is clearly distinguishable from the present case by the fact that none of the options in the Jeske case was automatic.

There is an additional and controlling reason which would prevent a recovery of the amount claimed by the appellee. By the terms of option C it is required to be exercised within ninety days from the due date of the premium in default. Appellee depends upon her letter of December 24, 1932, to show an election under option C, but we search that writing in vain for any indication of such an election. The purport of that letter is that in her opinion she is entitled to benefits without saying what benefits and without indicating whether it is under option A or option C. All that she said in the letter could be referred to the automatic option just as well as the third option. We are unable to find anything in the letter which could be interpreted as an election to take term insurance.

By the stipulation filed, referred to as a case stated, it is agreed that if the court should be of the opinion that the defendant is liable to the plaintiff only for paid-up insurance under option A, then judgment should be entered in favor of the plaintiff in the amount of five dollars, costs to be paid by the plaintiff.

Judgment reversed and it is directed that judgment be entered in favor of the plaintiff for the sum of five dollars; cost to be paid by the plaintiff.