SUE KOVACS, EXECUTRIX OF THE ESTATE OF STEPHEN KOVACS, PLAINTIFF, v. JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY OF BOSTON, MASSACHUSETTS, A CORPORATION, DEFENDANT.

Decided July 6, 1937.

·For the plaintiff, *David T. Wilentz* and *Abe S. Schwartz*.

For the defendant, *Martin P. O'Connor*.

BARBOUR, C. C. J. This action was tried by the court without a jury by consent of the parties on stipulation of facts.

On January 23d, 1925, the defendant issued its policy of life insurance on the life of Sophie Kovacs in the sum of $5,000 payable to her son, Stephen Kovacs, as beneficiary, an annual premium of $217.60 being payable on the anniversary of the policy on January 23d of each year.

The premiums falling due on January 23d, 1929, and on January 23d, 1930, respectively, were paid by the application

of dividends and by premium loans, the sum of $178.25 being borrowed for the purpose on January 30th, 1929, and the sum of $186.55 being borrowed for that purpose on April 3d, 1930, of which latter loan the sum of $9.80 was used to pay interest on the prior loan. On January 26th, 1931, the insured borrowed the sum of $320.20 executing a cash loan assignment therefor. At that time the total loan on the policy was $685.

The annual premium falling due on January 23d, 1931, was not paid, but on April 21st, 1931, a quarterly installment of the annual premium amounting to $56.05 was paid by applying a dividend of $42.40 and by borrowing from the defendant on the policy the sum of $13.65, thereby paying the policy up to the next quarterly due date, April 23d, 1931. The quarterly premium falling due on April 23d, 1931, was paid on July 27th, 1931, by a further loan on the policy of $22.70 and the payment of $33.35 in cash. The principal sum loaned on the policy was thereby increased to $721.35. It is to be noted that both of these quarterly installments of premium were paid after the period of grace had elapsed and presumably the policy was reinstated each time in accordance with the provisions thereof.

The premium loan assignment, in the form marked *Exhibit A,* attached to the stipulation, was executed for each premium loan made.

On July 23d, 1931, another quarterly premium of $56.05 became due on the policy which was not paid then or within the grace period provided by the policy or at any other time.

On July 23d, 1931, the loans made on such policy had reached the principal sum of $698.65 and the loan on July 27th, 1931, increased the principal sum to $721.35. The unpaid interest on the loan computed to July 23d, 1931, amounted to $20.89, bringing the total indebtedness on the policy, with interest computed to July 23d, 1931, including the loan made on July 27th, 1931, to the sum of $742.24, which if charged against the cash surrender value, would leave a balance thereof in the sum of twenty-six cents.

The policy of insurance provided for a grace of thirty-one days without interest, during which the policy should remain

in force, "for the payment of premiums or regular installments thereof after the first." The period of grace for the payment of premium falling due on July 23d, 1931, expired thirty-one days thereafter, that is, on August 23d, 1931.

On August 29th, 1931, Sophie Kovacs, the insured, died, On September 16th, 1933, Stephen Kovacs, the beneficiary, died, and on September 27th, 1933, letters testamentary were issued to Sue Kovacs, the plaintiff, on the estate of Stephen Kovacs, the deceased beneficiary under the policy. Proof of death of Sophie Kovacs, the insured, was filed with the defendant.

The policy provided for non-forfeiture options as follows:

"After two full annual premiums shall have been paid hereon, and if the payment of any subsequent premium or installment shall be in default more than thirty-one days, then:

"Option A.—Without action on the part of the holder, the policy will be continued for its value in participating paid-up life insurance (without disability or double indemnity benefits) which will have a yearly increasing surrender value in no event less than that required by law; or

"Option B.—If the holder so elect, the policy will be terminated and the surrender value paid in cash with the written assent of the person to whom it is made payable; or

"Option C.—Upon written request by the holder filed at the Home Office of the Company within ninety days from the due date of the premium in default, the policy will be continued at its face amount including any outstanding additions and less any indebtedness to the Company hereon or secured hereby, for its value in participating extended term insurance (without loan privilege or disability or double indemnity benefits) dating from said due date. Such insurance will have a decreasing surrender value expiring with the extension term.

"Upon due request of the holder filed at the Home Office of the Company while no premium is in default under this policy, extended term insurance may be made the automatic non-forfeiture option by endorsement hereon.

"The surrender value under Option B will be the reserve

on the policy and any outstanding additions, at the date of default in payment of premiums, less a surrender charge of one per centum of the face amount of the policy at the end of the second year, one-half of one per centum of the face amount of the policy at the end of the third year, and thereafter the surrender value will be the full reserve at the nearest even dollar per thousand dollars of insurance, less any indebtedness to the Company hereon or secured hereby, but the Company may defer payment of any surrender value for a period not exceeding ninety days after the application therefor is made.

"The paid-up and extended insurance under Option A and C are computed upon the basis of the surrender value applied as a net single premium at the attained age of the Insured upon the mortality and interest basis adopted for the reserve computation hereunder.

"The legal reserve under this policy is computed upon the American Experience Table of Mortality, with interest at three and one-half per centum per annum.

"Values not stated in the table herein will be furnished on request."

On September 15th, 1931, the beneficiary Stephen Kovacs, through his attorney, Hon. Elmer E. Brown, wrote to the defendant attempting to have the insurance continued under Option C, a copy of Mr. Brown's letter being attached to the stipulation. Under date of September 18th, 1931, the company over the signature of Mr. F. R. Bartlett, manager of its claim division, replied to Mr. Brown, stating among other things: "No request was made by the insured during her lifetime to continue the policy as extended insurance, and paid-up insurance is the automatic feature of the contract. However, as above stated, the small balance of cash surrender value of twenty-six cents was insufficient to purchase even $1.00 of paid-up insurance" and offered to pay the balance of the cash surrender value of twenty-six cents.

The plaintiff, as executrix of the estate of the beneficiary Stephen Kovacs, instituted this action and by her amended complaint seeks to recover under the first count the face amount of the policy; under the second count for extended

term insurance provided by Option C of the non-forfeiture options, on the theory that the policy had to its credit a cash surrender value of $21.15 sufficient to carry this type of insurance for a period of ninety-seven days from July 23d, 1931, a period expiring subsequent to August 29th, 1931, the date of the insured's death; and on the third count on the theory that the total indebtedness, when increased by interest, reached the cash surrender value on or about July 26th, 1931, and that the company not having given notice to the insured as required by the policy in such event, the policy continued and was in force at the time of the insured's death.

It was stipulated that if the plaintiff is entitled to extended term insurance judgment should be entered for her in the sum of $4,258 plus interest; that if there had been no indebtedness on the policy on the date of default (July 23d, 1931) and the effective non-forfeiture provision had been extended term insurance in accordance with the terms of the policy, a surrender value of $742.50 would have provided participating extended term insurance in the amount of $5,000 for a period of seven years, two hundred and three days, expiring on February 11th, 1939; that if the cash surrender value had been $21.15 (being the amount of the cash surrender value less the indebtedness with interest computed only to the last preceding anniversary of the policy) the term for which the policy under Option C would be extended would be ninety-seven days, expiring October 28th, 1931, in the amount of $4,279, subject of course to compliance with the terms, provisions and conditions of the policy; that if the interest on the indebtedness were computed and charged to July 23d, 1931, and the cash surrender value were thereby reduced to the sum of twenty-six cents it would have continued the policy as extended insurance for one day, and would have expired July 24th, 1931, in the amount of $4,258.

No notice was mailed to the insured or beneficiary by the defendant that the indebtedness equaled the cash surrender value of the policy, but under date of August 15th, 1931, and before the period of grace had expired, notice was given to the insured (*Exhibit C*) that the grace would expire thirty-one days after the due date (that is, July 23d, 1931) and

stating, "if the amount due shall not then have been paid the policy will become forfeited and void, except as to such rights to surrender value, paid up insurance, or extended term insurance as may exist under said policy, and before the payment can be accepted and the policy be reinstated evidence of insurability satisfactory to the company will be required," and further stating that it was important to her interest "to make payment before the expiration of the grace period."

Payment was not made before the expiration of the grace period, nor at any time since, and no application that the policy be reinstated was made. The insured died six days after the expiration of the period of grace.

When this matter came on to be heard the stipulation of facts was submitted to the court, lengthy oral argument had by counsel for both parties, and lengthy memoranda of law submitted by counsel for both parties. For the purpose of the record the attorney for the plaintiff moved for a directed verdict on which the court reserved decision because it involved a determination of the various points of law submitted and dealt with in the memoranda of counsel. For the purposes of the record I hereby deny such motion for a directed verdict to which an exception in behalf of the plaintiff is allowed in accordance with his request if I should deny such motion.

Counsel for the plaintiff in his brief submits that there are two questions, both being questions of law, as follows:

"1. Was the exercise of Option C by the beneficiary through his attorney, after the death of the insured but within the three months allowed for such exercise, legal, effective and binding upon the defendant?

"2. Assuming the option was exercised properly did the policy continue as extended term insurance at the date of her death?"

My answer to the first question being in the negative it becomes unnecessary to deal with the second question.

The policy having lapsed by reason of default in the payment of the premium falling due on July 23d, 1931, counsel

for the plaintiff contends that because of the death of the insured within ninety days thereafter, the beneficiary was entitled to make an election of one of the non-forfeiture options.

It is to be noted that option A becomes automatically operative "without action on the part of the holder," continuing the policy for its value in participating paid-up insurance, and that options B and C require affirmative election by the holder, in the case of option B, without limitation as to time, to terminate the policy and receive the surrender value in cash, with the written assent of the person to whom it is made payable, and in the case of option C, within ninety days of the due date of the premium in default, upon written request by the holder to have the policy continued at its face amount, including any outstanding additions and less any indebtedness to the company, for its value in participating extended term insurance, dating from said due date.

It is also to be noted that "upon the request of the holder filed at the Home Office of the Company *while no premium is in default* under this policy, extended term insurance, may be made the *automatic* non-forfeiture option by endorsement hereon."

We, therefore, have two classes of options: One where no premium is in default and whereby term insurance may be made the automatic non-forfeiture option (which option was not exercised); and the other where a premium is in default. In the latter class option A becomes automatically operative and option B and C are at the election of the holder.

The question is: who is the "holder"?

Counsel for the plaintiff states that he has been unable to find any case in which this point has been passed upon in the State of New Jersey and cites decisions in other jurisdictions including the case of *Veal* v. *Security Mutual Life Insurance Co. (Court of Appeals, Georgia)*, 65 *S. E. Rep.* 714, in which the court said among other things: "Counsel in their briefs have made a rather copious citation of cases, &c., but the fact is that the language adopted in their policies by the various insurance companies is so diverse that almost every

case stands upon its own peculiar facts and is incapable of any great extension as precedent in other cases." Therein lies the distinction between the case *sub judice* and the cases cited by counsel in most instances.

In the case of *Knapp* v. *John Hancock Mutual Life Insurance Company of Boston, Massachusetts,* 259 *S. W. Rep.* 862, an opinion by the St. Louis, Missouri, Court of Appeals, cited by the plaintiff, the policy apparently did not contain any provision which became automatically operative but gave the insured sixty days after default in payment of premium to elect as between extended term insurance, paid-up insurance, and receiving the surrender value, whereas in the case *sub judice* paid-up insurance automatically became operative. It is to be noted further that the United States Circuit Court of Appeals for the Eight Circuit, which includes the State of Missouri, disregarded the Knapp case in passing upon the same question in the case of *Columbian National Life Insurance Co.* v. *Griffith,* 73 *Fed. Rep.* (*2d series*) 244.

In the case of *Jeske* v. *Metropolitan Life Insurance Co.,* (*Pa.*) 172 *Atl. Rep.* 172, cited by the plaintiff, it is to be noted that "neither state statute nor policy specifies the option to be compulsory in case insured dies within three months without having made application," and that the law will enforce the option most advantageous to beneficiary. In the instant case the policy did specify the option to be compulsory in case of default although it is silent on the question of whether the insured dies within the period during which she might have in her lifetime exercised the option. In the Jeske case the automatic provision for paid-up insurance did not become operative unless the owner failed within three months from the due date of the premium in default to exercise his option and during such period there, therefore, was no insurance effective. In that case the court noticed the case of *McDonald* v. *Columbia National Life Insurance Co.,* 253 *Pa.* 239, and distinguished it, stating that in the McDonald case the "state law provided automatically for a paid-up life insurance policy * * * without action by either of the parties * * * and the provision of the state law

automatically applied," adding, "we have not that situation here." In the instant case, the provision of the contract of insurance is similar to the statutory provision in the McDonald case.

The case of *Winchell* v. *John Hancock Mutual Life Insurance Co.* (Federal Case No. 17866, Circuit Court, Massachusetts), cited by the plaintiff, dealt with the right to a paid-up policy holding that, the insured having the right to it, it was a right of property passing to the plaintiff. Such decision, however, does not apparently aid us in determining what is meant by the word "holder," nor does the decision in *Nielsen* v. *Provident Life Assurance Society,* 73 *Pac. Rep.* 171, cited by the plaintiff.

In the case of *New York Life Insurance Co.* v. *Nobel,* 124 *Pac. Rep.* 615, there does not appear to have been any provision for automatic insurance, but it appears that the company of its own volition made a settlement which the court said was "the most disadvantageous settlement possible under the law and facts" and that "it had no such right."

In the case of *Veal* v. *Security Mutual Life Insurance Co.* (*Court of Appeals, Georgia*), *supra,* the court said there likewise was no provision which operated automatically. This is likewise true of *North Carolina Life Insurance Co.* v. *Terrell,* 89 *A. L. R.* 1459; 150 *So. Rep.* 318, also cited by the plaintiff.

I am relying upon counsel's citation of these cases and quotations therefrom, and assuming that if the policies in question in any of such cases did have provisions for automatic operation of any form of insurance he would have so stated.

Taking up cases cited by counsel for the defendant in his brief we find the case of *Columbia National Life Insurance Co.* v. *Griffith, supra,* in which the court said:

"The truth is that the insured in this case failed to take extended insurance when he lapsed his policy because like many other persons he did not know when he was going to die. Because he died at the time he did, the plaintiff wants extended insurance. If he had died later and at a

time to which the value of the policy would not have extended his insurance, she would have insisted on paid-up insurance. What she requires is a statute providing that the owner of a lapsed policy may elect upon the death of the insured whether to take extended or paid-up insurance. The provision of the policy in suit for its commutation into paid-up insurance operated at the time of default. It was automatic at the moment of lapse."

The court further said:

"The question to be determined is whether upon the lapse of the policy the net value or net reserve available for the purchase of paid-up or of extended insurance was under the terms of the policy and the statutes of Missouri to be applied to the purchase of paid-up insurance. It is certain that after lapse the insured did not have both extended and paid-up insurance; *i. e.,* extended insurance if he died within a period during which his equity in the policy would have exercised it for its face value, and paid-up insurance for $450 if he lived beyond that period. * * * reduced to its lowest terms the question is whether the policy contained an automatic option for extended insurance or automatic option for paid-up insurance * * *. Section 5742 permits the 'legal holder of a policy' to elect within sixty days from the beginning of extended insurance provided by Section 5741 to take in lieu thereof a paid-up policy."

The policy in the case *sub judice* contained an automatic option for paid-up insurance.

In the case of *Kelly* v. *New England Mutual Life Insurance Co., 32 Fed. Rep.* (2d) (at *p.* 611), the court held:

"The plaintiff's position in this case is that the words 'the holder of this policy,' and 'the holder,' in the non-forfeiture of this policy, mean the beneficiary, or, as she is called in this policy, the annuitant; that inasmuch as the forfeiture provision gives certain options in case of default in the payment of premium, if the right to such options were to be of any value, the beneficiary was entitled to receive notice of such default; and that, not having such notice, she is now, after the death of the insured, entitled to exercise

the right of election between the options referred to. (1) A consideration of the policy makes it clear, however, that the plaintiff's interpretation of the words 'the holder' which is the basis of her whole case, cannot be sustained. The plaintiff does not contend, and could not successfully contend, that as beneficiary, she was entitled to notice of default in payment of premiums. *New England* v. *Clinchfield Coal Corp.* (*C. C. A.*), 9 *Fed. Rep.* (*2d*) 46, 51. Her rights, if any, in this respect, must depend upon whether she is included in the provisions of the non-forfeiture clause relating to the holder. *But these words plainly refer to that person who at any particular time has an interest in the contract of insurance as distinguished from the proceeds: in other words, the person who is paying the premiums, or, more definitely, the insured or her assignee."*

The court further said:

*"\* \* \* The person paying the premiums at the time might be the insured or someone else. Obviously, 'holder' was adopted as an apt, a convenient word, to describe either of these persons who might be paying the premiums at that time."* (Italics mine.)

Continuing, the court said:

"Much of the plaintiff's argument is directed to the point that the beneficiary of a policy of insurance has certain rights in the proceeds which vest at the time when the designation is made in accordance with the terms of the contract. There is no doubt about that proposition. The contract of insurance is in this respect *sui generis,* but the beneficiary's rights do not in any sense make her the owner of the contract. In *Chase National Bank et al.* v. *United States,* 278 *U. S.* 327; 49 *S. Ct.* 126; 73 *L. Ed.,* Mr. Justice Stone points out what the rights of the persons paying the premiums are, and leaves no doubt that such person is the real owner of the contract. To such a person the word 'holder' may be more aptly applied than to one who has an interest in the proceeds, no matter how well fortified that interest may be."

The case of *Kelly* v. *New England Mutual Life Insurance Co., supra,* was affirmed by the Circuit Court of Appeals for

the Third Circuit, 52 *Fed. Rep.* (*2d*) (at *p.* 9), in which the court said:

"It will thus be seen that the single question involved in the case is the meaning of the word 'holder' in the clause quoted. On the question the court below held with the insurance company that the word 'holder' meant Thomas Francis Kelly, the insured. Its views are expressed at length in an opinion reported in 32 *Fed. Rep.* (*2d*) 611, a reference to which would obviate present restatement.

"After due consideration had, we find ourselves in accord with the holding of the court below that the word 'holder' in the provisions quoted meant Thomas Francis Kelly, the insured."

The Supreme Court, Appellate Division, of New York, in the case of *Travelers Insurance Co.* v. *Healey*, 49 *N. Y. Supp.* 29, held that:

"He who takes out a policy of life insurance and pays the premium is the policy holder, until after proper transfer when the transferee becomes the holder."

In the case of *Michigan Mutual Life Insurance Co.* v. *Mayfield's Administrator*, 90 *S. W. Rep.* 607, the Court of Appeals of Kentucky held that:

"As the paid-up insurance clause automatically went into force upon a default in the payment of the premium, the insured could not substitute the extended insurance in lieu thereof without making the election to which reference has been made. *As the insured did not make the election his personal representative cannot do so.*" (Italics mine.)

The Supreme Court of Pennsylvania, in *McDonald* v. *Columbian Life Insurance Co.*, 97 *Atl. Rep.* 1086, said:

"* * * By the policy, such options are given to the insured and, in our opinion, must be exercised by him, especially that with reference to the purchase of extended insurance on his life. It is no more possible to procure valid life insurance on a dead man than valid fire insurance on a burned building. And, as in this case, such extended insurance was neither sought for nor obtained during the life of the insured, it cannot be secured later. The option was per-

sonal to him, and cannot be exercised after the rights and liabilities of the parties had been fixed by his death. Unless the insured elects to take extended insurance, the right thereto is lost. *Michigan Mutual Life Insurance Co.* v. *Mayfield's Administrator*, 121 *Ky.* 839; 90 *S. W. Rep.* 607; *Balthaser* v. *Illinois Life Insurance Co.* (*Ky.*), 110 *Id.* 258. See, also, *Sugg* v. *Equitable Life Assurance Soc.*, 116 *Tenn.* 658; 94 *S. W. Rep.* 936, and *Blake* v. *National Life Insurance Co.*, 123 *Cal.* 170; 56 *Pac. Rep.* 101."

The Superior Court of Pennsylvania (being the same court which determined the case of *Jeske* v. *Metropolitan Life Insurance Co., supra,* cited by the plaintiff) in a later decision on October 2d, 1935, in the case of *Brown* v. *John Hancock Mutual Life Insurance Co.*, 180 *Atl. Rep.* 746, said:

"It will be observed that it is provided by Option A that 'without action on the part of the holder' the policy will be 'continued for its value in participating paid-up insurance.' We believe the phrase 'without action' as here used is the equivalent of 'in case of no action' and that the death of the insured without an election by him left Option A automatically in effect. To hold otherwise would permit the beneficiary after death to choose the option most advantageous to her and correspondingly unfavorable to the insurer.

"The contention of the beneficiary that she was privileged after the death of the insured to make an election is directly contrary to the principles announced in the case of *McDonald* v. *Columbian Life Insurance Co.*, 253 *Pa.* 239; 97 *Atl. Rep.* 1086; *L. R. A.* 1916 *F* 1244.

"There, as here, there was involved a question as to the construction of options available to an insured after a default in the payment of premium, and insured had died before the exercise of an option. There was likewise there involved the right of parties between options providing for paid-up insurance and term insurance, but in the McDonald case the policy itself did not have the automatic feature that is contained in the policy we are considering. However, in that case, by the Massachusetts laws which there control, in the absence of 'any further stipulation or act, the right to have paid-up

insurance was automatic. In other words the facts in the two cases are parallel except that in the McDonald case the automatic provision was by virtue of a statute and here by the terms of the contract, and here the option is given to the holder and there to the insured. Mr. Justice Walling, in the McDonald case, said (253 *Pa.* 239, 244; 97 *Atl. Rep.* 1086, 1087; *L. R. A.* 1916 *F* 1244) : 'By the policy, such options are given to the insured and in our opinion must be exercised by him, especially that with reference to the purchase of extended insurance on his life. It is no more possible to procure valid life insurance on a dead man than valid fire insurance on a burned building. And as in this case such extended insurance was neither sought for nor obtained during the life of the insured, it cannot be secured later. The option was personal to him and cannot be exercised after the rights and liabilities of the parties have been fixed by his death. Unless the insured elects to take extended insurance, the right thereto is lost.' "

Continuing the court said :

"In the recent case of *Fisher, Ex'rx,* v. *Fidelity and Casualty Co.,* 316 *Pa.* 183; 173 *Atl. Rep.* 320, the claim was made that the insured's personal representative might exercise an option that the insured, if he had lived, could have exercised. The claim was rejected as being obviously contrary to what the parties intended. It was pointed out that if the insured had lived he might or might not have elected the option which appeared after his death to be most advantageous to him; that until death a different article was operative."

Continuing the court said :

"Looking at the contract in the case we are considering, the insured was in a position where he might elect to take either approximately $5 in cash or extended insurance for a term of two hundred and thirty-one days for approximately $800. If the beneficiary should be permitted to make an election after the death of the insured, she would then choose between $800 and $5 which, because of lack of proportion, would not be a choice. It would be so one-sided that it is

impossible to believe the parties intended that the right to choose after death should exist and be exercised by the [beneficiary] personal representative. *Fisher* v. *Fidelity and Casualty Co., supra;* 316 *Pa.* 183 (at *p.* 189); 173 *Atl. Rep.* 320, 322.

"Where the meaning of a word is ambiguous or capable of more than one meaning, we may refer to the context for the purpose of determining the matter. We are of the opinion that the word 'holder' here connotes insured or his assignee, and that under the options the election was required to be made during the life of the insured. Our conclusion is supported by a number of decisions in other jurisdictions: *Kelly* v. *New England Mutual Life Insurance Co., supra; Ziegler* v. *Kansas Life Insurance Co.,* 120 *Kan.* 252; 243 *Pac. Rep.* 272; 44 *A. L. R.* 1367; *Osborne* v. *Home Life Insurance Co.,* 123 *Cal.* 610; 56 *Pac. Rep.* 616; *Denver Life Insurance Co.* v. *Crane,* 19 *Colo. App.* 191; 73 *Pac. Rep.* 875; *Travelers Insurance Co.* v. *Heasley,* 25 *App. Div.* 53; 49 *N. Y. S.* 29, 30; *Hilton* v. *New York Insurance Co.,* 113 *Misc.* 74; 184 *N. Y. S.* 2. The case of *Jeske* v. *Metropolitan Life Insurance Co.,* 113 *Pa. Super.* 118, 172, also relied on by the appellee is clearly distinguishable from the present case by the fact that none of the options in the Jeske case were automatic."

The provisions in the policy in the Brown case appear to be identical with those in the case *sub judice,* and the reasoning therein aptly fits the policy we are now considering.

It is to be noted that the courts in passing upon policies which contain provisions which become automatically operative hold that the right to exercise an option for a different type of insurance does not pass to the beneficiary.

It is apparent from the decisions of the courts and the statutes of various states that it is considered improper for an insurance company to receive premiums over a period of years, building up a net value, without giving the insured, the holder, or the beneficiary, the benefit of such net value in event of default in premium payments.

In 1925 the legislature of New Jersey dealt with this ques-

tion and required insurance policies to contain a provision for paid-up insurance.

"Paid-up Policy. Seventh.—A provision, which, in event of default of premium payments after premium shall have been paid for three years, shall secure to the owner of the policy a stipulated form of insurance, the net value of which shall be at least equal to the entire reserve held by the company on the policy [specifying the mortality table and rate of interest adopted for computing such reserve] less a specified percentage not more than three of the amount insured by the policy, including dividend additions thereto, if any, and less any outstanding indebtedness to the company on the policy. The specified percentage referred to above need not be stated for the policy years included in the table of surrender values required by this act." *Supp. Comp. Stat.* 1925-1930, *p.* 863, § 99-94.

The policy we are considering complied with this statute, being, however, more favorable to the insured by providing that the automatic paid-up features should become operative after two full annual premiums shall have been paid. It is apparent that the word "owner" in the statute is synonymous with the word "holder" in the policy.

The word "holder" does not mean insured and does not mean beneficiary. If the "insured" were the person referred to such word would have been used. If "beneficiary" were meant such word would have been used. The word "holder" plainly refers to the person who at any particular time has an interest in the *contract* of insurance as distinguished from the *proceeds;* in other words, the person who is paying the premium, or, more definitely, the insured or her assignee.

The person paying the premium at the time might be the insured or someone else. Obviously "holder" was adopted as a convenient word to describe either of these persons who might be paying the premiums at the time. *Kelly* v. *New England Life Insurance Co., supra.*

The interest of the beneficiary being only in the proceeds and not in the contract of insurance he was not the holder, and, therefore, was not entitled to exercise Option C of the non-forfeiture option.

The person having an interest in the contract of insurance is the one who determines the provision which he desires to make for the beneficiary. The beneficiary does not have his choice of the type of insurance being taken out on the life of the insured.

Provision being made for insurance in the form of paid-up insurance to become automatically operative in event of default in the payment of premium, this constituted an agreement between the parties for paid-up insurance in such event, subject to the holder's right to elect extended term insurance or to surrender the policy and obtain the cash surrender value thereof. To hold that such option need not be exercised during the life of the insured but could be exercised by the beneficiary afterwards would be to permit the writing of insurance on a dead person.

Even though the insured died before the expiration of the period within which she was entitled to exercise one or the other of the options, to hold that such right passed upon her death to the beneficiary would be to write into the contract of insurance that which was clearly not contemplated by the parties.

"The law will not make a better contract for parties than they themselves have seen fit to enter into, or alter it for the benefit of one party and to the detriment of the other. The judicial function of a court of law is to enforce a contract as it is written." *Kupfersmith* v. *Delaware Insurance Co.,* 84 *N. J. L.* 271 (at *p.* 275); 86 *Atl. Rep.* 399.

I therefore hold that at the time of the death of the insured the provisions of Option A automatically operated and that, if entitled to anything, the insured was entitled to participating paid-up life insurance in accordance therewith.

Upon default in payment of premium and the continuing of such default beyond the period of grace, the policy lapsed and terminated as of the date of default, July 23d, 1931, at which time the cash surrender value was $742.50. Had the policy continued in effect the interest on the indebtedness would have been chargeable at the next anniversary date, but since the policy was terminated and lapsed, interest on the

indebtedness should be computed to the date of such lapse. Therefore, the total indebtedness, with interest, as of July 23d, 1931, was $742.24, the value of the policy being the sum of twenty-six cents. It does not appear that the sum of twenty-six cents was sufficient to purchase even $1 of paid-up insurance. This is apparently conceded by counsel for the plaintiff because in his brief he says that, "if one or both questions are decided in the negative the defendant is to prevail and judgment is to be entered for the defendant as provided by the agreed state of facts," although I do not find such provision in the agreed state of facts.

For the reasons given above I find the plaintiff is not entitled to recover, and find a verdict in favor of the defendant and against the plaintiff of "no cause for action."