## Toncich, Appellant, v. Home Life Insurance Co.

Argued October 11, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*John F. Gloeckner,* with him *Joseph I. Winslow,* for appellant.—The amount of the loan should be deducted, at the time of death, from any benefits payable, not at the time of lapse: Francis v. Ins. Co., 243 Pa. 380, 389; Krebs v. Ins. Co., 249 Pa. 330.

The dividend in the form of the coupon was applicable to the extension of the insurance: Harvey v. Ins. Co., 45 Federal (2d) 78.

*Arthur S. Arnold,* with him *Louis J. Bloch,* for appellee.—When the assured withdrew a part of the reserve by way of loan, the amount of extended insurance which the remaining cash value would purchase was proportionately reduced: Mills v. Ins. Co., 136 Tenn. 350; Neal v. Ins. Co., 138 So. R. 353; Hawthorne v. Life Co., 52 Fed. (2d) 309.

The supplemental agreement pertaining to the coupon had nothing to do with the provisions of the policy pertaining to the extended period and its method of calcu-

lation; nor is there any claim that the insured ever exercised any of his options pertaining to the coupon.

OPINION BY MR. JUSTICE KEPHART, November 28, 1932:

Appellant sued on a policy of life insurance issued by appellee. The annual premiums of $140.22 had been paid for four years since the date of issue, May 20, 1925. These payments kept the insurance in existence up to and including April 28, 1929. At this date it lapsed for nonpayment of premium, but being more than three years old was subject to an automatic extension. On November 1, 1928, the insured, plaintiff's wife, borrowed $300 from the company on the security of the policy; this sum remained unpaid thereafter. The insured died September 30, 1930, one year, four months and twenty-two days after the policy had lapsed.

Appellant, the beneficiary, claims the date of death was within the automatic extension which reads as follows: "The automatic extension of the net amount insured by this policy......for the number of years and months......are computed according to the provisions of this policy and upon the assumption that premiums have been paid in full for the number of years stated above, and that there is no indebtedness on the policy. Should any indebtedness exist, it shall be deducted from the cash value of the policy and the other values shall be correspondingly reduced. The cash value of the paid up ......insurance......if any, granted upon the lapse of this policy will be the full reserve at the time of surrender, less any indebtedness to the company." To bring the claim within the automatic extension the facts must support it.

When the payment of premiums ceased the policy lapsed; it was in effect in liquidation, and by its terms certain rights arose in the parties: Mills v. Ins. Co., 136 Tenn. 350; Bach v. Western States Life Ins. Co., 51 Fed. (2d) 191. Under the automatic extension clause the insured could demand that the reserve on the policy, built

up by the payment of premiums for four years, be applied to extend the full insurance. The period of extension was computed on the basis of reserve or cash value at the time of lapse, excluding any indebtedness. If there was any indebtedness on the policy, the insurer was entitled to liquidate it by charging it against this reserve value: Bach v. Ins. Co., supra; Hawthorne v. Bankers Life Co., 52 Fed. (2d) 309. When an indebtedness is charged against the reserve or cash value of a lapsed policy the extended insurance as shown by the table is proportionately reduced.

The reserve or cash value of this policy on April 28, 1929, was $324; the indebtedness was the $300 loan, leaving $24 to secure extended insurance. This sum, on the basis of the tables in the policy, would extend the insurance for one year and eleven days, at the expiration of which period, insured being still alive, the policy ceased and determined.

Appellant relies on Francis v. Prudential Ins. Co., 243 Pa. 380, where the insurer was not allowed to reduce the term of extended insurance because of indebtedness. In that case, however, the policy did not so provide, and the court said at page 390: "If appellant intended to reduce the term of extended insurance on account of loans to the insured, it would have been an easy matter to have so provided in the policy...... There is no provision in the policy for the reduction......on account of indebtedness." In the instant case the policy expressly provides for such a reduction. Appellant's contention would permit an insured to take, in the form of a loan, cash to the full amount of the reserve on his policy and still claim the benefit of the extended term which that reserve would have secured if left intact. This of course is contrary to the terms of the policy.

On April 28, 1929, there was due a guaranteed coupon for $11.40 by virtue of a supplemental agreement as follows: "On the second and each subsequent anniversary date of the policy, provided it be then in force, there will

become due and payable in cash a coupon for the amount shown below. The insured, however, may select any one of the three following options: 1. To apply the coupon towards paying the premium then due, by surrendering it and paying in cash the full premium less the coupon." The two remaining options are not material to this issue. Plaintiff argues that this $11.40 should have been applied by the company towards a further extension of the policy. The statement of claim contains no averment that insured made any effort to have the coupon so applied. In the absence of any indication by the holder of what should be done, and in view of the four possible dispositions of the coupon, it is difficult to see how appellant can now claim that the coupon had the effect of extending the insurance.

The judgment of the court below is affirmed.