## Felderman, Trustee, v. Inter-Southern Life Insurance Company

*Arthur S. Arnold,* for plaintiff.
*John G. Kaufman,* for defendant.

KUN, J., October 3, 1935.—This is an action in assumpsit on a policy of life insurance issued by the defendant company on the life of William Wahlberg, dated September 15, 1927, in the amount of $2,500. On July 15, 1930, a loan of $107 was made to the insured. The quarterly premium of $34.28 due on September 15, 1930, was not paid then or within the grace period of one month thereafter. After the expiration of the grace period, the insured died on November 9, 1930. The trial judge directed a verdict for the plaintiff beneficiary for "the face value of the policy, $2,500, less the amount of the loan which had been made thereon, which reduced the amount of the claim to $2,407.82". By deducting the amount of the loan of $107 from the face value of the policy of $2,500, the difference would be $2,393, and if the interest on the loan of $1.08 were also deducted, the amount would be $2,391.92. There was a coupon due and payable under certain conditions on September 15, 1930, for $15.77, and this added to the last figure would make the amount $2,407.69. The directed verdict also ignored consideration of the unpaid premium which had fallen due on September 15, 1930, in the sum of $34.28. If it were merely a matter of correcting the figures the trial judge or the court en banc could readily do it without the necessity of going through another trial. However in this case the directed verdict for the plaintiff cannot be sustained at all on the present record.

The trial judge assumed that the policy was in force for the full amount because of the nonforfeiture clause of the policy, which provides that "If the insured shall fail to pay any premium when due, or within the period

of grace, and shall not have exercised any of the foregoing options (no option having been exercised by the insured), the Company, subject to the other conditions of the policy, shall grant the extended insurance hereinbefore provided". According to the table referred to, the insurance at the end of the third year was extendable for two years and one hundred and thirty-eight days. The trial judge overlooked the significant provision in the last quoted nonforfeiture clause that the granting of the extended insurance referred to was "subject to other conditions in the policy". Manifestly, extended insurance on a lapsed policy is granted on the basis of the reserved value of the policy which has been built up by the insured through the payment of his premiums. If, therefore, the insured has borrowed any part of his reserve, he cannot have extended insurance, under the lapsed policy, for a longer period than the balance of his reserve, if any, can purchase, where the policy provides that any indebtedness must first be deducted. This is provided for in the policy under "Options on Surrender or Lapse" as follows: "(2) If there be any indebtedness to the Company, provided the policy shall have been in force for two full years, such indebtedness shall be deducted from the amount which would otherwise be available as a cash value, and the insured may, upon written request, have the remainder applied, (a) to extend the insurance, without the right to loans for the full amount of the policy, less the indebtedness; or, (b) to procure a reduced amount of paid-up insurance payable at the death of the insured; or (c) receive such remainder as a cash value". Though the insured exercised none of the options, the law will give him the benefit of the most favorable one, i. e., extended insurance for the full amount: Jeske, Admx., v. Metropolitan Life Ins. Co., 113 Pa. Superior Ct. 118.

Prior to the date of the death of the insured in this case the policy had lapsed for nonpayment of the premium due September 15, 1930, or within the grace period of one month thereafter. Because of the nonforfeiture

clause referred to, the defendant could not forfeit the policy because of such nonpayment inasmuch as it had a certain cash value which could be used to extend the insurance, but before the amount of the cash value and the term of extended insurance could be ascertained the indebtedness due the defendant had first to be deducted under the very terms of the policy: Toncich v. Home Life Ins. Co., 309 Pa. 336; Jeske, Admx., v. Metropolitan Life Ins. Co., supra.

The case was tried on the assumption that the cash value of the policy was $107.50. If the loan previously made to the insured, the sum of $107, is deducted there is left only 50 cents for the purchase of extended insurance, which admittedly would not extend it to the date of the insured's death. The so-called coupon for $15.77 cannot be taken into account for by its very terms it was payable on September 15, 1930, provided "all premiums due on said policy up to and including said date had been paid in full". Admittedly, the premium due on that date was not paid, so that the amount of the coupon could not be used for setting up any additional cash reserve: Toncich v. Home Life Ins. Co., supra.

The defendant on the state of the record probably is entitled to judgment n. o. v. We have concluded, however, to grant the plaintiff a new trial to enable the plaintiff to present the case again, after amendment of the pleadings, to make the contention that the correct reserve to which the insured was entitled under the Act of May 17, 1921, P. L. 682, for the purpose of determining what extended insurance was available, was the "loan" value of the policy at the end of the third year, which would be $165, and not the "cash" value, which was calculated on the basis of the loan value at the end of the preceding year, and which amounted to only $107.

The Act of 1921 requires in policies of life insurance (section 410) "(i) A provision which, in event of default in premium payments after premiums shall have been paid for three years, shall secure to the owner of the

policy a stipulated form of insurance, the net value of which shall be at least equal to the reserve at the date of default on the policy", etc.

The real issue in this case was, in our opinion, not presented by either the plaintiff or the defendant, and that is as to what the "reserve" in the policy really was at the time of the default. Under the policy, the amount of extended insurance was to be based on the "cash value" available, less of course any indebtedness. According to the table of loan and surrender values, the "loan value" at the end of the three-year period is greater than the available cash value under its terms at that time. There is required, however, under the statute, a consideration of the "reserve" at the date of default. If it can be shown that the proper "reserve" in the policy is its "loan" value, rather than its "cash" value under its terms, the extended term of insurance would cover the date of the death of the insured. Since this cannot be determined on the present state of the record, we grant a new trial.

Barnett, P. J. (specially presiding), and Parry, J., concur.