Commonwealth, Appellant, v. Beisel.

Argued April 8, 1940; reargued May 6, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, BARNES and PATTERSON, JJ.

520

*E. Russell Shockley,* Deputy Attorney General, with him *Robert E. James* and *Claude T. Reno,* Attorney General, for appellant.

*Geo. F. Coffin, Jr.,* for appellee.

OPINION BY MR. JUSTICE STERN, May 13, 1940:

The question presented by the Commonwealth on this appeal is whether the proceeds of certain insurance policies constitute an "annuity" within the meaning of that term as used in the State Personal Property Tax Act of June 22, 1935, P. L. 414, section 3, and the amendatory Act of May 18, 1937, P. L. 633.

W. Clayton Hackett, who died in 1930, was insured in two life insurance policies for the benefit of his daughter, now Ann Hackett Beisel. One was that of the Equitable Life Assurance Society for $10,000, the other that of the Massachusetts Mutual Life Insurance Company for $25,000. The Equitable policy provided that the insured (or the beneficiary, after his death, in case he should have made no election) might elect to have the sum due upon his death paid to the beneficiary either in cash or according to any of certain other specified methods; the insured, by a provision added to the policy, chose the option that the beneficiary should be paid monthly installments of $41.80 each for a period of thirty years. These installments aggregated the amount of the proceeds due, with interest. The Massachusetts policy provided for a similar option, also selected by the insured, whereby the beneficiary was to be paid the amount of the policy in monthly installments of $125 each until the proceeds, together with interest, should be exhausted.

The Secretary of Revenue assessed the proceeds[1] of these policies for each of the years 1936, 1937 and 1938 as taxable annuities. The Court of Common Pleas reversed the Department of Revenue.

"Annuity" is a term somewhat loosely used in financial and legal nomenclature and is perhaps incapable of exact definition. Generally speaking, it designates a right—bequeathed, donated or purchased—to receive fixed, periodical[2] payments, either for life or a number of years. Its determining characteristic is that the annuitant has an interest only in the payments themselves and not in any principal fund or source from which they may be derived. The purchaser of an annuity surrenders all right and title in and to the money he pays for it. On the other hand, where a debtor agrees to pay his creditor in installments at regular intervals, the debt or principal sum itself is due to the creditor although payable only in the manner agreed upon; it is an account receivable in which he has a property interest. Therefore, installment payments of a debt, or payments of interest on a debt, do not constitute an annuity: see *Barber's Estate*, 304 Pa. 235, 241, 242; *Keiper v. United Zion Home*, 108 Pa. Superior Ct. 28, 31, 32.

The series of payments by which defendant in the present case is to receive $10,000 due her on one policy and $25,000 on the other, together with interest, represent nothing more than installment payments of debts owed her by the insurance companies. It is suggested by the Commonwealth that if the proceeds of the poli-

---

[1] The assessments were computed with reference to defendant's life expectancy. The reason for this is not clear, as the total amounts of insurance due under the policies will be ultimately paid, and the installment payments are not restricted to defendant's lifetime. However, no appeal was taken by the Commonwealth from the assessments as made.

[2] To constitute an "annuity" it is not necessary that the payments be annual.

cies had been paid to her in full, and she had thereupon handed the money back to the companies under agreements whereby she was to receive the same periodical payments as those now received under the option clauses, she would be purchasing an annuity, and the Commonwealth argues that when the companies retain the proceeds instead of paying them to defendant and receiving them back, the transaction is in substance the same. But the difference between the hypothetical and the actual case is that, in the former, defendant transfers her interest in and to the funds as consideration for the periodic payments which she is purchasing, whereas, in the latter, she retains ownership of, and interest in, the principal of the debt which is due to her, just as if she had left the money with the companies on deposit, and she merely agrees to accept payment thereof in installments. The form of the transaction is of vital importance in determining whether the intention is to pass title to the fund or obligation from which the payments emerge.

While the only question raised by the Commonwealth is thus disposed of, there is inherent in the case the necessity of a further inquiry as to whether the proceeds of these policies come under any other provision of the State Personal Property Tax Act. One of the subjects of taxation enumerated in the act is "accounts bearing interest." In *Arbuckle's Estate,* 324 Pa. 501, partnership articles of agreement provided that upon the death of any of the partners the amount due him should remain with the surviving partners as a deposit drawing a specified rate of interest, the principal to be payable in installments. It was held that so long as interest was credited thereon the amount due to the deceased partner's estate was taxable as an "account bearing interest" under section 1 of the Act of June 17, 1913, P. L. 507, which imposed a personal property tax for county purposes. So, here, the funds which are allowed to remain with the insurance companies, bearing in-

terest, clearly come within this category of the State Personal Property Tax Act. The fact that, in their origin, they were the proceeds of insurance policies is immaterial. While insurance policies or their proceeds are not in themselves taxed by the Act, if the beneficiary, or the insured on her behalf, chooses to allow the companies to retain the proceeds and pay them in such manner and form as to constitute an interest-bearing account, they thereby become an investment which is taxable, irrespective of the source from which they were derived.

The order or decree of the court below is reversed, and the record is remitted with directions to enter judgment in favor of the Commonwealth and against defendant for the amount of taxes due under the assessments made by the Department of Revenue.