Hitner et al., Appellants, *v.* Penn Mutual Life
Insurance Company.

Argued April 20, 1944. Before MAXEY, C. J., DREW,
LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

reargument refused September 25, 1944.

*J. Joseph Stratton,* with him *Barnie F. Winkelman,*
for appellants.

*Owen B. Rhoads,* with him *Barnes, Dechert, Price & Smith,* for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, June 30, 1944:

This is an appeal from the final judgment entered in favor of the defendant in an action of assumpsit on an insurance policy. On April 9, 1907, Robert A. Patton insured his life for the sum of $45,000 in The Penn Mutual Life Insurance Company. The appellants, the substituted beneficiaries, claimed to recover $3,635.55, with interest; $2,984.85 thereof being the proportionate amount of extended insurance payable under said policy; and $650.70 thereof being a balance of the dividend of $659.70 payable under said policy on April 9, 1931.

On and prior to October, 1929, the policy was in the possession of the defendant company as security for a loan of $12,500 to the insured, and in October, 1929 the loan was increased to the sum of $17,543.75, which sum with interest for the year ending April 8, 1931, amounted to $18,596.38. The premium due April 9, 1931, was not paid, and no premium was paid thereafter. The insured died on April 25, 1942.

The non-forfeiture provisions of the policy, paragraph IX, stipulated that upon lapse after payment of three years' premiums the insurance would extend automatically for the period set forth in the table of extended insurance printed below paragraph X thereof, and also set out the paid-up insurance and loan or cash surrender values.

Twenty-four annual premiums of $1,354.05 had been paid, and on April 8, 1931, the policy completed its 24th year; its period of "extended insurance" was, according to the table, 11 years, 223 days; its "paid-up insurance" value was 45 times $642 or $28,890, and "the loan or cash value" 45 times $442.61 or $19,917.34. Under other terms of the policy the dividends awarded thereon were

to be retained by the company to accelerate the maturity of the insurance as an endowment; or used in the payment of premiums. In April, 1910, the insured elected to apply the dividends thereafter accruing in reduction of premiums and that direction continuously thereafter remained in force.

In its affidavit of defense, the company averred that under date of July 24, 1941, it sent a written notice to the insured, addressed to Mr. and Mrs. Robert A. Patton, stating (1) the lapse of the policy for failure to pay the premium due April 9, 1931, (2) the cancellation of the indebtedness of $18,596.38 by deducting that amount from the cash value of $19,917.45, and (3) the automatic extension of insurance for the sum of $26,404, until May 4, 1933. A copy of this notice was attached to the affidavit of defense. Appellants claim that no proof of this averment was offered by the appellee at the trial.[1] The policy was not at any time returned to the insured. When he demanded its return the appellee stated that it had been destroyed. Appellee then delivered to the insured a form of policy which appellants adopted as a copy of the original policy.

The plaintiffs read into evidence the averments of the several paragraphs of the statement of claim and the admissions contained in the corresponding paragraphs of the affidavit of defense, and put in evidence the policy, the direction for the application of the dividends, the notice of the premium due April 9, 1931, the check of April 7, 1942, for $13.87 and the table of further extension of the insurance and cash values from the 21st to the 24th years. The specified values, on the unit of $1000 worth of insurance, at the end of the twenty-fourth policy year are as follows:

---

[1] The company offered in evidence the company's letter of May 8, 1942, to the son of the insured in which it was stated the above amount was the "amount of insurance extended under the policy" and showing that "the total period of extended insurance was" according to the calculations therein set forth, "two years and 25 days."

"if [quoting from the policy] no indebtedness exists against it"

| Period of Extended Insurance | Amount of Paid-Up Insurance on Surrender | Loan or Cash Surrender Values |
|---|---|---|
| 11 years, 223 days | $642.00 | $442.61 |

The policy states: "Should any indebtedness exist it shall be *deducted* from the Cash Value of the Policy and the other Values shall be diminished proportionately." The defendant's evidence consisted of the testimony of an assistant actuary of the company and certain exhibits, including the certificate of the insured's indebtedness. Judge KUN then entered a decree nisi in favor of defendant. Exceptions to it were dismissed and final judgment was entered accordingly.

The decision in this case depends entirely on the interpretation of the language of the insurance contract. The word "values" in the quoted provision of the policy obviously refers to "extended insurance" as well as to the two other "values." If the "extended insurance" is *not* a value, the only *other* value, after "cash value" is eliminated from the thought, would be the "paid-up insurance" value, and the word "value" instead of "values" would have been used in the policy, after the word "other."

The policy provides in effect that the *amount* of insurance was to be diminished only "should any indebtedness exist," for in the absence of such indebtedness, it states: "If this policy shall lapse through non-payment of premium after three years' premiums have been paid in cash, the Company, subject to the other conditions of the Policy, will guarantee the following options, as provided for in the table of values given below:

"FIRST.—Will extend automatically, as term insurance, without participation, *the net amount insured by this Policy,* [italics supplied] for the number of years and days named; . . ."

There is nothing in the contract of insurance except the provision as to the insured's indebtedness, which calls for a diminution of the amount of insurance contracted for, in the event of the non-payment of premiums. At the beginning of the policy the company promises "to pay . . . the sum insured hereby less any indebtedness . . ."

Plaintiffs' claim that the *amount* of the insurance and not the term of extension is the "value" which is to be diminished proportionately for non-payment of the premium, must be rejected. Defendant's contention that under the contract the amount of the insurance could not be proportionately diminished on the insured's failure to pay the premium due but that on the contrary, the automatic extended insurance feature[2] became operative in the full amount of the policy, less the indebtedness due by the insured on that policy, that is, $26,440, must be accepted. The term for which the insurance was to run was a "value," and on the insured's failure to pay the premium due, it was the company's right and duty to "diminish proportionately" that "value" which was the policy's "period of extended insurance." That the term of a policy has value requires no demonstration. These plaintiffs are attempting by this action to give the policy "value" by asking a judicial determination to the effect that its term, after default in the payment of the premium due, was eleven years, 223 days, which period would cover the date of the insured's death.

The company's right to deduct from the policy's cash value, the insured's indebtedness, and to reduce the amount of paid-up insurance in the same proportion as the cash value is reduced is predicated both on the policy

---

[2] The insured never exercised any of the options provided for in the policy and therefore the policy on the insured's failure to pay the premium due was placed on "automatic extended insurance" to May 4, 1933.

and on the certificate of indebtedness offered in evidence. This certificate sets forth as follows:

"where the Policy provides for automatic extended insurance the amount so extended shall be the face value of the Policy, less the total indebtedness, and for such a term as said reduced cash value shall provide."

Furthermore, it should be noted that the net value of the policy, $1971.77, would purchase extended insurance in the sum of $45,000 for a much shorter period then it would purchase $26,404 of extended insurance. Under either plan the term of extended insurance would have ended before the insured's death.

The case of *Steuernagle, et al. v. Metropolitan Life Ins. Co.*, 322 Pa. 289, 185 A. 208, cited by appellant is inapplicable, for in that case the policy provided that it was the amount of insurance and not its term which was to be reduced if premiums were not paid.

In *Toncich v. Home Life Ins. Co.*, 309 Pa. 336, 163 A. 673, the reserve or cash value of the insurance policy on which that suit was based was on April 28, 1929, $324; the indebtedness was a $200 loan. This court held that this left $24 "to secure 'extended insurance.' This sum, on the basis of the tables in the policy, extended the insurance for one year and 11 days, at the expiration of which period, the insured being still alive, the policy ceased and determined." In that case this court said that "When the payment of premiums ceased the policy lapsed; it was in effect in liquidation, and by its terms certain rights arose in the parties: *Mills v. Ins. Co.*, 136 Tenn. 350; *Bach v. Western States Life Ins. Co.*, 51 Fed. (2d) 191. Under the automatic extension clause the insured could demand that the reserve on the policy, built up by the payment of premiums for four years, be applied to extend the full insurance. The period of extension was computed on the basis of reserve or cash value at the time of lapse, excluding any indebtedness. If there was any indebtedness on the policy, the insurer was entitled to liquidate it by charging it against this

reserve value: *Bach v. Ins. Co.*, supra; *Hawthorne v. Bankers Life Co.*, 52 Fed. (2d) 309. When an indebtedness is charged against the reserve or cash value of a lapsed policy the extended insurance as shown by the table is proportionately reduced." The phrase "proportionately reduced" as used in the policy in the *Toncich* case has exactly the same meaning as the phrase "diminished proportionately" which is used in the policy now being interpreted. The decision in the *Toncich* case is controlling in this case.

Appellant also complains that the company upon the non-payment of the premium disregarded the direction of the insured to apply the amount of all dividends in reduction of the annual premium, but instead, it retained the amount of the dividend due $650.70, when the premium, $1354.05, was not paid and applied the same to the cash value of the policy. The company takes the position that the amount of the dividend being insufficient to pay the annual premium due, it was impossible to use the dividend in reduction of the premium, that it had to be treated as "accumulated surplus," and that in adding it to the "cash surrender value" the company was acting in accordance with the provisions of the insurance contract. This addition increased the net value of the policy which was available for the purpose of purchasing extended term insurance.

Our conclusion is that in so doing, and in all other respects, this company fulfilled all its obligations under the insurance contract and deprived the insured and their beneficiaries of none of their rights.

The judgment is affirmed.