## Kratzer v. The Colonial Life Insurance Company of America

*C. M. Bolich,* for plaintiff.

*C. G. Helwig,* for defendant.

HENNINGER, P. J., July 21, 1952.—This case came on for trial without a jury upon a stipulated statement of facts as follows:

1. Plaintiff, Anna Louise Kratzer, is the primary beneficiary named in a policy of life insurance issued by the Colonial Life Insurance Company of America, designated as policy no. 72225, and resides at Allentown, Route 60, Lehigh County, Pa.

2. Defendant, the Colonial Life Insurance Company of America, is a corporation, incorporated by the laws of the State of New Jersey, and doing business in various portions of Pennsylvania, having and maintaining an office in Allentown, Lehigh County, Pa.

3. On June 30, 1933, Herbert W. Kratzer, the husband of plaintiff, made application to defendant, the

Colonial Life Insurance Company of America, for the issuance of a policy of life insurance.

4. On July 18, 1933, defendant, the Colonial Life Insurance Company of America, issued and delivered its policy of insurance no. 72225 to Herbert W. Kratzer in consideration of the premium set forth in the policy, which had been duly paid by Herbert W. Kratzer.

5. The original policy issued to Herbert W. Kratzer is delivered to the court and is marked exhibit A.

6. In the policy of life insurance no. 72225, Anna Louise Kratzer, plaintiff, is designated as the primary beneficiary entitled to the proceeds of the policy, as appears on exhibit A.

7. The insured, Herbert W. Kratzer, paid the premiums due upon the policy of insurance no. 72225 issued by defendant, the Colonial Life Insurance Company of America, semiannually from July 18, 1933, to July 18, 1942.

8. The insured, Herbert W. Kratzer, failed to pay the semiannual premium due on July 18, 1942, upon the policy of life insurance no. 72225 issued by defendant, the Colonial Life Insurance Company of America on or before July 18, 1942, and did not tender payment of the same until September 15, 1942.

9. On September 15, 1942, the insured, Herbert W. Kratzer, made application to defendant, the Colonial Life Insurance Company of America, for the reinstatement of policy no. 72225 and tendered the semiannual premium of $12.65, which had been due on July 18, 1942, and had not been paid on or before that date. A photostatic copy of the application of reinstatement is delivered to the court and is marked exhibit B.

10. Defendant, the Colonial Life Insurance Company of America, rejected the application for reinstatement of insurance policy no. 72225 and notified the insured, Herbert W. Kratzer, prior to March 20, 1943, that the policy of insurance would not be rein-

stated and tendered the return of the premium of $12.65, which it had received with the application for reinstatement, which premium was refused by the insured, Herbert W. Kratzer.

11. On March 20, 1943, the insured, Herbert W. Kratzer, through his attorney, Charles M. Bolich, notified defendant, the Colonial Life Insurance Company of America, of the election by the insured to have the policy of insurance continued as extended term insurance. A copy of this letter is delivered to the court and marked exhibit C.

12. On April 2, 1943, defendant, the Colonial Life Insurance Company of America, notified Charles M. Bolich, attorney for the insured, Herbert W. Kratzer, that the policy of insurance no. 72225, had been continued for paid-up insurance of $246 in accordance with the terms of the policy of insurance, and that extended term insurance was not available to the insured since his request for extended term insurance had not been made within two months from the date of the premium in default. A photostatic copy of this letter is delivered to the court and marked exhibit D.

13. The insured, Herbert W. Kratzer, died on May 12, 1951.

14. Plaintiff, Anna Louise Kratzer, the primary beneficiary named in the policy of life insurance no. 72225, alleges that the face value of the policy, $1,000, is due and owing by defendant, the Colonial Life Insurance Company of America, to plaintiff, Anna Louise Kratzer, if the policy of insurance continued as extended term insurance, because as extended term insurance the policy would continue in effect for a term of 10 years and 276 days from January 18, 1942.

15. Defendant, the Colonial Life Insurance Company of America, alleges that there is due and owing to plaintiff, Anna Louise Kratzer, the beneficiary named in policy of insurance no. 72225, the sum of

$246, the paid-up value of the policy of insurance and the further sum of $12.65, representing the premium which was paid to defendant, the Colonial Life Insurance Company of America, with the application for reinstatement on September 15, 1942, and which the insured, Herbert W. Kratzer, refused to accept when tendered to him by the agent of defendant, the Colonial Life Insurance Company of America.

16. The policy contains, inter alia, the following provisions:

"*GRACE PERIOD* — A grace of thirty-one days, without interest charge, will be granted for the payment of every premium, or installment of premium, after the first, during which time this policy will remain in force. If death occur within the days of grace the unpaid premium or portion thereof for the then current policy year shall be deducted from the amount payable hereunder.

"*REINSTATEMENT* — If this Policy shall lapse for non-payment of any premium when due, it may be reinstated at any time upon written application with evidence, satisfactory to the Company, of the insurability of the Insured and the payment of all overdue premiums with interest at the rate of six per cent. per annum. Any loan which existed at the date of default, together with interest at the same rate to the date of reinstatement, may be, at the option of the owner on application for such reinstatement, either repaid in cash or continued as an indebtedness against the Policy.

"*NON-FORFEITURE PRIVILEGES*

"Upon failure to pay any premium or any instalment of premium when due, this Policy shall immediately lapse, and all premiums paid hereon be forfeited to the Company, except as otherwise herein provided. If the lapse occur after three full years' premiums shall have been paid, the Insured shall, upon written

request filed with the Company at its Home Office together with this Policy for legal surrender or for endorsement, within two months from the due date of the premium in default, be entitled to one of the three options stated below.

"If there is no indebtedness hereon, the full values will be allowed, as shown in the tables on a following page hereof, but if there be any indebtedness hereon, it will be deducted from the cash value and the amount of paid-up insurance or the period of extended term insurance will be correspondingly reduced.

"First. Paid-up Insurance.—To have the insurance continued for a reduced amount of paid-up insurance, payable at the same time and under the same conditions as this Policy. Such paid-up insurance shall have an increasing cash surrender value equivalent to the full reserve at the date of surrender, or

"Second. Extended Term Insurance.—To have the insurance continued for the original amount of this Policy as term insurance dating from the due date of the premium in default, but with a cash surrender value decreasing each year and ceasing entirely upon the expiration of the extension term, which value shall be equivalent to the full reserve at the date of surrender, or

"Third. Cash Value.—To receive a cash surrender value, provided, however, that the Company may, at its option, defer the payment of the cash surrender value for at least sixty days from the date of the surrender of the Policy.

"If the Insured shall not within two months from the due date of the premium in default, surrender this Policy to the Company at its Home Office for a cash value or present it for endorsement for paid-up insurance or extended term insurance as provided in the above options, the Policy shall be continued for paid-up insurance as provided in the first option.

"The values of these options are equivalent and have been calculated on the basis of the American Experience Table of Mortality with interest at the rate of three and one-half percent. per annum on the Modified Preliminary Term Reserve basis, as provided in Section 24 of the Insurance Laws of the State of New Jersey, less a surrender charge not exceeding in any case 2½ per cent. of the face of the Policy. Should surrender or default be at any other time than at the anniversary date of the Policy, the value for the preceding policy year shall be proportionately increased for the portion of the policy year for which premiums have been paid."

### Discussion

Our sympathies are at once with plaintiff, not because of her need but because we believe that in all equity she should be entitled to recover on this policy. It must be understood that the insured attempted to reinstate his policy within the period allowed for the exercise of an option upon the defaulted policy. It is true that this left the company only three days within that period to act upon the application for reinstatement, but it does not explain the holding of the application for reinstatement for eight months until March 2, 1943, assuming that the date March 2, 1942, in the eighth paragraph of defendant's answer is a typographical error.

We take it that, other things being equal, the most desirable solution for a lapsed policy is reinstatement and that insurers generally encourage it. It would be anomalous for an insured to apply for reinstatement of his policy and at the same time to call for an option for the defaulted policy.

A factor of prime importance in this case is that the application for reinstatement was made *before* insured had lost his option and *before* the policy automatically became a paid-up policy for the life of in-

sured. Another factor in plaintiff's favor is that insured promptly chose extended term insurance, that is, within three weeks of notification of the rejection of his application for reinstatement. While it is true that circumstances at the time of action and not eventual occurrences determine the rights of the parties, the length of insured's life after choosing extended term insurance and the narrow margin by which the policy almost became extinct, negative the idea that insured was 'betting on a sure thing' when he chose that option. See Toncich v. Home Life Insurance Co., 309 Pa. 336, 339. Had insured lived two years longer the policy on his option would have been worthless instead of having the value of $246 offered by defendant.

Unless, therefore, the language of the policy permits of no other interpretation, we would hold that the application for reinstatement made in good faith, within the period when insured still had an option upon default, and accepted by the insurer's agent for transmittal to his company, suspended the necessity of insured to exercise his option.

Defendant has cited no cases directly on point. Wagenhorst v. Philadelphia Life Insurance Co., 359 Pa. 441, illustrates the familiar case where a beneficiary after insured's default and death, seeks to invoke an option found after the event to have been more favorable to insured.

The same is true of McDonald, Executrix, v. Columbian National Life Insurance Company, 253 Pa. 239, a case strikingly similar to ours with one significant distinction, namely, that insured died without having exercised any option. Furthermore, the disposition of the policy upon default and in the absence of option was by Massachusetts law and not by contract, as in our case. There insured applied for reinstatement of a lapsed policy, which was rejected. At the time of

insured's death, his attorney was still seeking reversal of the reinstatement, but no option had been chosen. In our case, had insured died between March 2 and March 20, 1943, our cases would have been almost identical. The McDonald case contains this very significant language (p. 244):

"It is not necessary to decide whether said options could have been exercised by the insured after default, for in any event we are satisfied they could not after his death."

The necessity for election during the lifetime of the insured is also stressed in Browne v. John Hancock Mutual Life Insurance Company, 119 Pa. Superior Ct. 222. The case of Peters v. Colonial Life Insurance Company of America, 128 Pa. Superior Ct. 21, relates solely to reinstatement and in that case the verdict on the facts was in defendant's favor. In our case the question of reinstatement is important only as extending the time for exercise of an option. There can be no doubt that in this case the policy was in default and, upon expiration of the grace period became so as of the due date of the defaulted premium and that upon rejection of the application for reinstatement the default continued and was still dated from the due date of the defaulted premium. The question here is whether the application for reinstatement pending in the hands of the insurer extended the period in which insured could exercise his option.

The diligence of counsel has failed to find a Pennsylvania case ruling this one, but plaintiff cites Farmers and Merchants Bank v. Metropolitan Life Insurance Co., 150 S. C. 93, 147 S. E. 742, in which the Supreme Court of South Carolina held that a pending application for reinstatement extended the time for exercise of an option. The case would not be good law in Pennsylvania for it permitted an option by the assignee of the policy after the death of the insured.

It is persuasive only in that it treats the problem of the effect of application for reinstatement as a waiver of the strict time for exercising an option and as estopping the insurer from refusing such an option.

If there is lack of authority on this particular point, there is an abundance of authority that equally clear provisions in insurance policies may be waived and the insurer estopped to assert them as a defense. Arlotte et al. v. National Liberty Insurance Company, 312 Pa. 442, is a leading case on this subject and on page 447 is cited a long line of policy provisions which Pennsylvania courts held had been waived. The Arlotte case has been cited with approval in Howley v. Scranton Life Insurance Co., 357 Pa. 243, 248, and as late as Pittsburgh et al. v. Firemen's Insurance Company of Newark, 366 Pa. 49, 54, and Hoffman et al. v. Neshannock Mutual Fire Insurance Co., 156 Pa. Superior Ct. 13, 18.

In many of these cases the question of an agent's authority to waive a policy provision arises. In the Hoffman case, supra, and in the case now under consideration, this question does not arise because the negotiations causing delay were at the insurer's main office.

We recognize the dangers and difficulties inherent in a ruling that such a policy provision can be waived. The beneficiary could have relied upon insurer's letter of April 2, 1943, declaring that it considered itself bound only to paid-up insurance, had insured died after the expiration of the extended term. Defendant, however, created this situation itself by making the claim without seeking to clarify the situation in insured's lifetime.

Mere suspension of the period for exercising the option upon application for reinstatement would have given insured only three days after rejection of his application for reinstatement to exercise his option.

It seems that would be too short a time for the right of option to be of value. On the other hand, we hesitate to say that a new 60-day period would be available. Suffice it to say that insured, acting within three weeks of the notification of rejection, acted with reasonable diligence and therefore in time.

Nor do we mean to say that once the period to exercise an option has passed, an application for reinstatement would revive the right of option. When the period for option has passed, the rights of the parties are fixed and only actual reinstatement can revive insured's rights of option upon a new default.

We recognize insured's option to select extended term insurance for the face of the policy solely (a) because it would be inconsistent for an insured to apply for reinstatement and at the same time to direct the insurer to grant extended term insurance, (b) because application for reinstatement, made before expiration of the time for exercising an option upon default, suspended the period for option, (c) because the option was exercised promptly upon receipt of notice that the application for reinstatement had been rejected, and (d) because it was made in the lifetime of the insured.

The court applies to these facts, the following

### Conclusions of Law

1. In the absence of express language to the contrary, an application for reinstatement of a defaulted insurance policy, received for consideration by an insurer before the period has expired in which insured may exercise options for settlement of a defaulted policy, suspends the period for such option.

2. Upon rejection of such application for reinstatement the insured may personally exercise such option, provided he act with reasonable diligence after notification of such rejection.

3. Plaintiff is entitled to judgment in her favor and against defendant in the sum of $1,000 with interest from May 12, 1951, and costs.

Now, July 21, 1952, the above decision is ordered filed and notice of its filing given to counsel for the respective parties and, if no exceptions are filed thereto within 30 days after service of such notice, judgment shall be entered in favor of plaintiff and against defendant in the amount of $1,000 with interest from May 12, 1951, and costs.