**STOWE TOWNSHIP**

v.

**STANDARD LIFE INSURANCE COM-PANY OF INDIANA.**

Civ. A. No. 73–44.

United States District Court,
W. D. Pennsylvania.

July 27, 1973.

William A. Johnson, Pittsburgh, Pa., for plaintiff.

William L. Standish, Pittsburgh, Pa., for defendant.

## OPINION AND ORDER

SNYDER, District Judge.

This matter comes before the Court by agreement of counsel to determine prior to pretrial a question of law on which we have found little precedent. A brief statement of the facts is necessary.

On March 1, 1970, Stowe Township, a political subdivision of the Commonwealth of Pennsylvania, entered into an agreement with Standard Life Insurance Company of Indiana (hereinafter called Company) to fund and implement a Pension Plan for their Police Department, Service and Police Department employees and the Township Board of Commissioners.

Under this contract, the plaintiff was to deposit with the Company such amounts as were recommended by an actuary to fund the benefits provided by the plan. The amounts designated were augmented by a guaranteed rate of interest. Should an employee become eligible for his pension, withdrawals from the Purchase Payment Fund were to be made upon written authorization of the employer and deposited to a group annuity account from which guaranteed monthly pensions were payable.

Effective June 30, 1972 the Stowe Township Board of Commissioners acting under the provisions of the First Class Township Code of the Commonwealth of Pennsylvania (applicable to Stowe Township, Act of May 29, 1956 P.L. 1804, as amended, 53 Pur.Stat. Section 767, providing that any such police pension funds shall be "under the direction of the governing body of the . . . . township") and in accordance with the termination provision of the contract with the Company, terminated the Agreement.

By letter dated August 17, 1972 (Exhibit C to the Complaint) the Township gave notice that they were demanding payment. In their demand they stated:

"Having reviewed section 12 (sic) of the contract and existing paid-up annuity contracts previously issued by Standard Life Insurance Company of Indiana, namely policy Numbers AN–111513 and AN–116667, as referred to in said section, we are willing to accept the following as full and complete settlement under the contracts;

"95% of the Purchase Payment Fund applied toward purchase of paid-up annuities, these same annuities being liquidated immediately for their full cash surrender value of at least 93.1% of the single premiums paid thereon and the proceeds of these automatic liquidations are to be sent to the following address;

"Stowe Township Municipal Building
1301 Island Avenue
McKees Rocks, Pennsylvania 15136"

When the defendant refused to "liquidate" the contract in the manner demanded by the plaintiff, complaint was filed in the Court of Common Pleas of Allegheny County, Pennsylvania. The relief sought was a money judgment for the aggregate amounts deposited in the Deposit Administration Fund less certain deductions. On January 11, 1973, the action was removed to this Court pursuant to 28 U.S.C. Section 1332. The plaintiff filed in this Court a Petition for a Mandatory Injunction to require the Company to pay to the plaintiff the balance of the Purchase Payment Fund in accordance with its demand.

The plaintiff contends that annuity policies should be issued at once so that they may be immediately surrendered for their cash value. The defendant has

resisted this request and has elected to enforce a penalty provision of the Administration Contract whereby ten percent of the entire fund created by the Township's periodic deposits are retained by the Company, and has proposed disbursement of the balance at such times as the individual employees are eligible for the benefits under the Township's Retirement Plan. The Township claims that the Company's failure to presently pay the cash surrender value, "inherent in the concept of the Deposit Administration Contract", has caused the Township to experience considerable financial difficulty in meeting its obligations under its contracts with its various employees, and threatens to bankrupt the pension program established for those persons. The Company does not contest the right of the plaintiff to terminate the contract by written notice, and the Township concedes that the Company's duty on termination is governed by Section I–2 of the contract, but also contends that, of necessity, there is included a recognition of the duty of the Company to pay immediately the cash surrender value. The Company maintains that its obligation on termination of the contract is to provide paid-up annuities in reduced amounts in form and substance the same as annuities that would have been provided had the contract not been terminated. Such annuities would be purchased with the monies available in the Deposit Administration Fund less the applicable charges.

The Court then conceives the question before it to be: where a Deposit Administration Contract between a Pennsylvania employer and an insurance company requires that upon its termination the company shall provide "paid-up annuities", must such annuities, as a matter of law, contain a provision for cash surrender values?

Section I–2 of the contract provided as follows:

"If this contract is terminated in accordance with Section 1 the compa-

ny [defendant] shall discharge its liabilities under this Contract by providing paid-up annuities to the participants in such amount as they may be entitled to under the Plan as directed by the Employer. Such paid-up annuities shall be purchased with no less than 90% of the total amount held in the Purchase Payment Fund on the date of such termination."

■  An analysis of this section of the contract shows that only one requirement is made of the Company, and that is, to provide "paid-up annuities". As we understand it, in insurance language, an annuity is a right to receive fixed, periodical payments for life or for a number of years. As was stated by Mr. Justice Stern in Commonwealth v. Beisel, 338 Pa. 519, 13 A.2d 419, at p. 420–421 (1940):

"'Annuity' is a term somewhat loosely used in financial and legal nomenclature and is perhaps incapable of exact definition. Generally speaking, it designates the right—bequeathed, donated or purchased—to receive fixed, periodical payments, either for life or for a number of years. Its determining characteristic is that the annuitant has an interest only in the payments themselves and not in any principal fund or source from which they may be derived. The purchaser of an annuity surrenders all right and title in and to the money he pays for it.  .  .  ."

■  This Court has searched for any technical definition of the words "paid-up annuities" but has failed to find one. Ordinarily, by virtue of contract or statute, there is a provision upon default or termination of a contract of life insurance, that the insured shall be entitled to extended or paid-up insurance and a cash surrender value. In Couch on Insurance 2d [Volume 6, Page 354], Section 32:137 the following appears:

"(P)aid-up insurance means that no more payments are required, and consists of insurance for life in such an

amount as the sum available therefore, considered as a single and final premium, will purchase. In other words, 'paid-up insurance' is insurance for the life of the insured, upon which all the premiums have been paid, . . ."

See Nichols v. Mutual L. Ins. Co., 176 Mo. 355, 75 S.W. 664; Hitner v. Penn Mut. Life Ins. Co., 350 Pa. 326, 38 A.2d 914 (1944).

A cash surrender value, in a technical sense, is applicable only to life insurance policies. Commonwealth v. Metropolitan Life Ins. Co., 254 Pa. 510, 98 A. 1072 (1916); Rishel v. Pacific Mut. Ins. Co. of California, 78 F.2d 881, 131 A.L.R. 414 (10th Cir. 1935). Even as to life insurance *Couch* makes the positive statement which is well borne out by the cases cited (Section 32:138, Page 356, Volume 6, 2d):

"In the absence of contract or statutory provision therefor, neither the insured nor the beneficiary has any right to paid-up or extended insurance and a policy of insurance has no loan or cash surrender value."

If an Annuity, by the terms of the contract creating it, does not entitle the owner or annuitant to the immediate return of all or part of the consideration paid for upon its termination or cancellation, then we do not believe that any such right can be interpreted to be "inherent" in such a contract. See: 43 Am.Jur.2d, Insurance, Section 654 and cases there cited.

The Deposit Administration Contract between the Township and the Company did not require that the annuities be furnished with cash surrender values. From what has been said, it is clear that the term "paid-up annuities" can not be construed to mean that they necessarily include cash surrender values.

■ We must then determine whether or not any such right is created by statute. The only possible relevant stat-

ute our attention has been called to is the Pennsylvania Act of May 17, 1921, P.L. 682, as amended, 40 Pur.Stat. Section 510(a), governing the standard provisions for all annuities delivered in the Commonwealth, except policies of industrial insurance. Under this statute there is an express exception for those contracted for by employers on behalf of their employees and, therefore, that Act cannot apply. We have also searched the Police Pension Act, being the Act of May 29, 1956, P.L. 1804, as amended, 53 Pur.Stat. Sections 761, 768, and can find no requirement that annuities issued thereunder shall have cash values or entitle the owners to the return of any part of the consideration upon termination or cancellation. Counsel for the Township have been unable to cite to this Court any statutory provisions which would require the inclusion of a cash surrender value. Counsel for the Township contends, although he does not strongly argue, that an ordinary annuity contract is contrary to public policy, but the authorities are against them on this proposition. 4 Am.Jur.2d, Annuities, Section 5 and cases there cited. Statutory interpretation also would lead to a contrary conclusion, for under Regulation No. 20, Chapter 1, Series 100, pertaining to variable annuity contracts as issued by the Insurance Department in Section 4(e) (iii) there is a provision that specific options *may* include an option to surrender the contract for a cash value. There is no *requirement* that such an option be included.

It is, therefore, our conclusion that there is nothing in the nature of an annuity which requires it to have a cash surrender value. Since no cash surrender value is provided for in the contract nor in the statutory provisions applicable thereto, it is the conclusion here that there is no right to demand a cash surrender value, or a policy containing such a provision.

An appropriate order will be entered.