McDONALD, Justice,
dissenting.
I respectfully dissent. “Annuity contract” is a general term used loosely in financial and legal nomenclature and eludes exact definition. See Commonwealth v. Beisel, 338 Pa. 519, 13 A.2d 419, 420-21 (1940) (discussing the ambiguity of the term “annuity”). The ambiguity of the term, without precise definition by the Florida legislature, renders section 222.14, Florida Statutes (1989), ambiguous on its face.
Such ambiguity is resolved, however, by considering the legislative history of section 222.14. In 1978, the legislature amended section 222.14 to provide:
Exemption of cash surrender value of life insurance policies and annuity contracts from legal process. — The cash surrender values of life insurance policies issued upon the lives of citizens or residents of the state and the proceeds of annuity contracts issued to citizens or residents of the state, upon whatever form, shall not in any case be liable to attachment, garnishment or legal process in favor of any creditor of the person whose life is so insured or of any creditor of the person who is the beneficiary of such annuity contract, unless the insurance policy or annuity contract was effected for the benefit of such creditor.
Ch. 78-76, § 1, Laws of Fla. (1978 legislative additions to the statute underlined). The Staff Analysis and Economic Statement to Senate Bill 163 (dated January 10, 1978) reveals the legislature’s purpose in amending the statute:
In 1977 the definition of “life insurance” in the Insurance Code, ch. 624-632, F.S., *439 was expanded to include annuity contracts (ch. 77-295). Currently, § 222.14, which is not in the Insurance Code, exempts the cash surrender value of life insurance from attachment, garnishment, or legal process. It is not clear whether the term “life insurance” as used in § 222.14 includes proceeds of annuities.
Thus, the legislature intended to expand the scope of section 222.14 to the same extent that it expanded the insurance code’s definition of “life insurance.” The only annuity contracts exempt under section 222.14 are those that involve the insurance of human lives. Interpreting the statute to exempt the glorified account receivable in the instant case violates the legisla-. ture’s intent and unjustly deprives LeCroy of what he is legally entitled to under federal and state bankruptcy law.
Legislative intent aside, while the payments McCollam claims to be exempt may technically be proceeds of an “annuity contract,” they are, in substance, a structured account receivable. The substance of the arrangement, rather than the label affixed to it, determines whether the payments are exempt as proceeds from an annuity, or an account receivable, and part of the bankruptcy estate. See In re Young, 806 F.2d 1303, 1307 (5th Cir.1987) (interpreting similar Louisiana statute to disallow exemption of annuities from bankruptcy estate); see also Beisel, 338 Pa. at 521, 13 A.2d at 421 (holding that installment payments on a debt do not constitute an annuity for the purposes of state property tax). Thus, even assuming that section 222.14 is plain on its face and applicable to the proceeds of annuity contracts, I would hold that Travelers Insurance Company’s monthly payments to McCollam merely constitute installment payments on an account receivable, not an annuity contract within the scope of the statute.
SHAW and GRIMES, JJ., concur.